Wayne Glenn KNUTSON, Appellant,

v.

Lou V. BREWER, Appellee.

No. 79–1861.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1980.

Decided April 17, 1980.

Jerald W. Kinnamon, Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, Iowa (argued), and Jon M. Kinnamon, Cedar Rapids, Iowa, on brief, for appellant.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa (argued), and Thomas J. Miller, Atty. Gen., Des Moines, Iowa, on brief, for appellee.

Before BRIGHT, ROSS and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

This is a petition for habeas corpus brought by a state prisoner, Wayne Glenn Knutson. The District Court (the Hon. W. C. Stuart, Chief Judge) dismissed the petition on its merits. We affirm.

Knutson is serving a life sentence for the crime of kidnapping for ransom.[1] He claims he is unconstitutionally in custody for two reasons: (1) The Iowa kidnapping-for-ransom statute, § 706.3, Code of Iowa (1971), is invalid as applied to his conduct in this case; and (2) even if the statute is valid, a rational jury could not have found beyond a reasonable doubt all the elements of the crime of which Knutson was convicted.

A brief statement of the facts and of the course of proceedings in the State courts is necessary to place these issues in context. On the night of February 27, 1972, Knutson forced his way into a car driven by Vicki Lynn Sullivan. He drove to a secluded spot some distance away, all the while holding Miss Sullivan by the neck. When he stopped the car, he made advances, which were repelled. He then demanded that the victim have sexual intercourse or oral copulation with him, or she would be harmed. Miss Sullivan continued to resist, and Knutson repeatedly told her that she would be all right if she did what he wanted. Finally Knutson forced her to commit sodomy. She tried to run away but was recaptured. After holding the victim a while longer, Knutson drove back to his own car and left her. The whole episode took about an hour.

Knutson was charged with assault with intent to commit a felony, sodomy, and kidnapping for ransom. The jury convicted him of all three offenses. The trial court sentenced Knutson to five years for assault with intent to commit a felony and to ten years for sodomy. With regard to the third offense the trial court expressed some hesitation. The statute defining the crime of kidnapping by ransom, § 706.3, Code of Iowa (1971), then read[2] as follows:

> 706.3 Kidnapping for ransom. Whoever kidnaps, takes, or carries away any person, or decoys or entices such person away from any place in this state for the purpose of or with the intention of receiving or securing from anyone any money, property, or thing of value as a ransom,

---

1. Knutson is apparently also under another life sentence for rape. *State v. Knutson*, 234 N.W.2d 105 (Iowa 1975). It is unnecessary to consider whether the existence of this second life sentence would bar habeas relief here, since we have concluded that Knutson's claims here lack merit in any event.

2. The crime has since been redefined, effective January 1, 1978. See Iowa Code Ann. §§ 710.-1-.4 (1979).

reward, or price for the return of the person so kidnapped, taken, carried, decoyed, or enticed away, as aforesaid, or whoever shall imprison, detain, or hold any person at any place in this state for the purpose or with the intent of receiving or securing from anyone money, property, or thing of value as a ransom, reward, or price for the return, liberation, or surrender of the person so imprisoned, detained, or held, shall be deemed to be guilty of the crime of kidnapping for the purpose of ransom, and upon conviction thereof shall be punished by imprisonment for life at hard labor in the penitentiary and the court shall enter judgment and pass sentence accordingly.

The trial court observed that the Supreme Court of Iowa had never expressly held that the performance of an illegal act, as opposed to the payment of money, could be an element of the crime of kidnapping for ransom. The court was of the opinion that the Supreme Court of Iowa, if faced with the question, would uphold the application of the statute. Nevertheless, the trial judge, feeling no doubt that criminal statutes should be strictly construed, sentenced Knutson only for the lesser included offense of kidnapping, instead of the offense of kidnapping for ransom, which was, of course, the charge on which Knutson had been tried and convicted. A term of five years was imposed on the kidnapping charge, to run consecutively to the five years for assault with intent to commit a felony and the ten years for sodomy. Thus, the result of the initial sentencing was a total term of imprisonment of 20 years.

The State of Iowa then brought certiorari in the Supreme Court of Iowa, as permitted by state law, to review the legality of the sentence thus imposed upon Knutson. In *State v. Sullivan*, 215 N.W.2d 491 (Iowa 1974), the Supreme Court of Iowa held that Knutson should have been sentenced for kidnapping for ransom. The sentence imposed by the trial court was vacated, and the case was remanded for resentencing. On remand, a life sentence was imposed in accordance with the Supreme Court's holding. Life in prison was the mandatory sentence under Iowa law for kidnapping for ransom. On direct appeal, Knutson's conviction was affirmed. *State v. Knutson*, 220 N.W.2d 575 (Iowa 1974).

This case thus turns on the distinction, under Iowa law, between kidnapping for ransom and simple kidnapping. Simple kidnapping is a mere abduction. Kidnapping for ransom requires both an abduction and the demand of money or other "thing of value" as a "ransom, reward, or price for the return, liberation, or surrender of the person" abducted. Up until the time of Knutson's conviction, the Supreme Court of Iowa had not expressly held whether the obtaining of sexual gratification was a "thing of value" under its statute. Knutson argues that the current construction of the Iowa statute is so unexpected as to amount to the imposition of punishment without prior fair notice.

It is clear, of course, that an individual may not be punished for crime if, under the words of the statute, he had no reasonable expectation that his conduct would be unlawful. The Fourteenth Amendment requires a certain degree of clarity, particularly in criminal enactments. This doctrine, often expressed by the phrase "void for vagueness," is quite simple. People should not be branded as criminals or condemned to suffer grievous loss without fair notice that the legislature has in fact forbidden the conduct for which they are being punished. Knutson points out that the phrase "thing of value" had always before, in Iowa, been applied to the demand for something whose worth could be expressed in money. How could he have known, he argues, that sodomy would be held to be a "thing of value"? Counsel cite, in addition, a number of cases and statutes from other jurisdictions in an attempt to show that the Iowa interpretation of "thing of value" was unexpected.

We find little appeal in this line of argument. The statute had included the term "thing of value" in addition to the words "money" and "property" since its enactment in 1902. The inclusion of the addi-

tional phrase "thing of value" was clear notice that a non-monetary demand might come within the definition of the crime denounced. If the Supreme Court of Iowa had earlier construed the statute to include only money demands, and had then overruled its earlier cases in Knutson's case, appellant might have a point. That did not happen here. The Supreme Court simply held that sodomy is a "thing of value." There is nothing intrinsically startling or outlandish about such a reading. The words of the statute, simply as a matter of English, easily bear this meaning. The Supreme Court of Iowa, as a matter of State law, might have interpreted its statute narrowly, applying the rule of *ejusdem generis* to limit the term "thing of value" to something of monetary or pecuniary value. But the Fourteenth Amendment does not require the states to use any particular canon of construction in construing their own criminal laws. Obviously the act of sodomy was, as a matter of fact, a "thing of value" to Knutson, else he would not have demanded it. In addition, we think it significant that the issue of construction involved here is not the drawing of a line between legal conduct and illegal conduct. What Knutson did was unlawful under any interpretation of Iowa law, and he makes no contention to the contrary. His position, reduced to its simplest terms, is that he had a right to expect that he would be convicted for kidnapping only, rather than for kidnapping for ransom. This kind of reliance interest is not, in our view, entitled to a great deal of weight.[3] When a person does an act that he well knows to be a violation of some law, and when a statute is later interpreted to cover his conduct in a way that does not do violence to the ordinary understanding of the English language, the Fourteenth Amendment is not offended.

*Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975) (per curiam), provides important guidance. There a Tennessee statute proscribing the "crime against na-

ture" was held not to be fatally vague. The Court said:

> It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, [74 S.Ct. 808, 812, 98 L.Ed. 989] (1954); see *Wainwright v. Stone*, 414 U.S. 21, 22, [94 S.Ct. 190, [192], 38 L.Ed.2d 179] (1973). But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties," *Robinson v. United States*, 324 U.S. 282, 286, [65 S.Ct. 666, 668, 89 L.Ed. 944] (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. Cf. *Nash v. United States*, 229 U.S. 373, [33 S.Ct. 780, 57 L.Ed. 1232] (1913); *United States v. National Dairy Corp.*, 372 U.S. 29, [83 S.Ct. 594, 9 L.Ed.2d 561] (1963). All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden. (Footnote omitted.)

The phrase "thing of value" in the Iowa statute required some construction. Its application to every future situation is not clear on the face of the words. But that is true of all, or at any rate of most, criminal statutes. Knutson took the risk that the Supreme Court of Iowa would construe the statute as it did.

██ He also argues, in addition to his due-process attack on the statute, that the Iowa law, as construed, violates the *ex post facto* clause. This argument must also be

---

**3.** "In applying the rule against vagueness or overbroadness something . . . should depend on the moral quality of the conduct." Freund, *The Supreme Court and Civil Liberties*, 4 Vand.L.Rev. 533, 540 (1951), quoted with approval in *Bouie v. City of Columbia*, 378 U.S. 347, 362 n.9, 84 S.Ct. 1697, 1707 n.9, 12 L.Ed.2d 894 (1964).

rejected. To begin with, the *ex post facto* clause applies, by its own terms, only to legislation. *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977); *Frank v. Mangum*, 237 U.S. 309, 344, 35 S.Ct. 582, 593, 59 L.Ed. 969 (1915). By definition, an *ex post facto* law is a statute that, among other things, makes criminal conduct that was not criminal at the time it took place. A judicial construction of an existing criminal statute, already on the books at the time of the conduct in question, cannot be a violation of the *ex post facto* clause. It can, of course, be a violation of the Due Process Clause, as the Supreme Court made clear in *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), if a law is interpreted in an unexpected fashion, if a statute narrowly and precisely drafted is unexpectedly expanded to cover conduct without fair notice. Enough has already been said to demonstrate that this is not that kind of case. We have here no judicial expansion of precise language, nor do we have a judicial repudiation of an earlier narrow construction. Instead, the Supreme Court of Iowa has simply given a common-sense interpretation to a phrase that was in the statute all along.

■ In addition, cases in other jurisdictions, relied on by the Iowa court, gave ample reason to expect that the Iowa statute might well be given this construction. See *Householder v. Ramey*, 485 P.2d 247 (Okla.Crim.1972); *Phillips v. State*, 267 P.2d 167, 170 (Okla.Crim.1954) (phrase "any money, property or thing of value or advantage" includes the chastity of the woman abducted); *State v. Berry*, 200 Wash. 495, 512, 93 P.2d 782, 790 (1939) (phrase "intent to . . . obtain money or reward" includes a forced ride in an automobile). The Supreme Court has specifically held that a state criminal statute may be validly applied to conduct never previously expressly held to be within its terms, when cases in another state, decided before the conduct charged, support such a construction. *Rose v. Locke, supra*. Counsel have expended considerable energy attempting to distinguish or explain away these and other cases cited by the Supreme Court of Iowa. We

do not stop to consider these points in detail, because they fundamentally miss the mark so far as the only question before this habeas court is concerned. Our task is not to decide how we would have interpreted the Iowa statute had we been sitting on the Supreme Court of that state. We must decide only whether the construction actually given the statute was foreseeable. We hold that it was. The Due Process Clause does not automatically guarantee that a defendant will receive the benefit of the narrowest verbally possible construction of a previously unexplicated phrase in a state criminal statute.

■ We next turn to the question whether a rational jury could have found Knutson guilty of kidnapping for ransom beyond a reasonable doubt. It is our duty to decide this question under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the law of Iowa as authoritatively laid down by the Supreme Court in this case, the elements of the crime of kidnapping for ransom are: (1) Taking or carrying away a person (2) with intent to require from any one (3) any money, property, or thing of value (4) in exchange for the liberation of the person kidnapped or detained. Appellant claims that there was insufficient evidence of the fourth element—that is, that whatever he may have demanded from Miss Sullivan, or required her to perform, was not demanded or required in exchange for her liberation or release.

■ We have carefully inspected the transcript of the trial and are persuaded that the evidence introduced was substantially in excess of the constitutional minimum. After describing her abduction, the prosecuting witness said of Knutson: "[H]e just told me as long as I did what he said I wouldn't get hurt." He demanded that she either have sexual intercourse or oral copulation with him. She refused: "I didn't trust him. I knew that he could just as easily kill me then as afterwards so I resisted all the time. . . . He just kept repeating during the time as long as I did

what he said, I'd be okay, I wouldn't get hurt." Knutson then, according to Miss Sullivan's testimony, forced her to perform the act of sodomy. He then allowed her to get out of the car. She started to run off, and he caught her and brought her back to the car. "He made attempts to kiss me again. . . . But, anyway, he said, okay, this was enough. . . . He just said, okay. That was okay. That was it." Knutson then let Miss Sullivan start driving, and she drove back to his car, whereupon he got out of Miss Sullivan's car and got back into his own. "He kissed me again and then he got out on the passenger's side of the car. . . . I knew at this time he wasn't going to try anything more. . ." The prosecuting witness did not see Knutson again that night.

The inferences from this testimony are strong that Knutson's purpose in abducting Miss Sullivan was sexual gratification, and that sodomy was demanded in exchange for her release. No doubt the jury could have declined to find this crucial element of crime. It was clearly told by the trial court, however, that Knutson could not be found guilty of kidnapping for ransom unless the jury were convinced, beyond a reasonable doubt, that he kidnapped and detained Miss Sullivan with the intent of receiving a thing of value as a ransom or price for her liberation. We have no difficulty in concluding that an affirmative answer to this question was a rational one on the record before the jury. It was not necessary for Knutson to express himself with the precision usually reserved for the statement of consideration in a written contract. Compare State v. Leuth, 128 Iowa 189, 103 N.W. 345 (1905). It was necessary only that, in context, Miss Sullivan, and later the jury, could reasonably understand Knutson's demands to be a condition or price for her release. The record amply supports such a conclusion.

The judgment is affirmed.