# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3331

_____

United States of America

*Plaintiff - Appellee*

v.

Bradley Cook

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 14, 2014
Filed: April 9, 2015

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Bradley Cook pled guilty to one count of commercial sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1),[1] 1594, and 2.

_____

[1] This section was amended on December 23, 2008. As Cook's conduct occurred both prior and subsequent to the amendment date, the government chose to charge Cook under the older version of the statute. 18 U.S.C. § 1591 (2006)

Before entering his plea, he filed a motion to dismiss this count, arguing 18 U.S.C. § 1591 was unconstitutionally vague as applied to him, a purchaser of commercial sex. As part of his plea agreement, Cook retained the right to appeal any denial of his motion to dismiss. The district court[2] denied the motion to dismiss, finding the statute was not unconstitutionally vague as applied to Cook. We affirm.

## I. Background

As Cook moved to dismiss on the grounds that section 1591 is "unconstitutionally vague as applied to the allegations in the indictment, we consider the facts as alleged in the indictment." United States v. Birbragher, 603 F.3d 478, 481 (8th Cir. 2010). Cook, a resident of St. Louis, Missouri, was charged in a superseding indictment with co-defendants Edward Bagley, Marilyn Bagley, and Michael Stokes. In December 2002, the Bagleys, a married couple, convinced a 16-year-old female (the female victim, hereinafter "FV") to come live with them in their trailer home in a wooded area in Lebanon, Missouri. The Bagleys promised FV, who had a troubled childhood in foster care homes and who they believed to have "mental deficiencies," that they would give her "a great life" and help her achieve her dreams of becoming a model and dancer. After FV moved in, Mr. Bagley started a sexual relationship with her, and the Bagleys together began to "groom and coerce" FV to become a "sex slave." In February 2004, shortly after FV's 18th birthday, Mr. Bagley had her sign a "sex slavery contract," which he told FV legally bound her to be his "sex slave" indefinitely. The Bagleys then began a course of severe physical, psychological, and sexual abuse and torture of FV.

---

(amended 2008). All references to section 1591 herein are to the 2006 version of the statute under which Cook was charged in the indictment.

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Mr. Bagley posted live video streams and pictures of the torture sessions online and advertised that FV would engage in sexual acts and could be tortured during live online sessions or in person. Cook began viewing the video streams and pictures in 2004 and communicating with Bagley via telephone and the Internet. Cook sexually tortured women in his residence in St. Louis and sent Bagley pictures and advice on those methods so Bagley could apply them against FV. In January 2006, Cook began traveling to Bagley's trailer in Lebanon to engage in vaginal, anal, and oral sex with and sexual torture of FV. Cook witnessed or participated in acts of sexual torture of FV "including, but not limited to, flogging, whipping, shocking, choking, piercing, skewering, sewing, stapling, and electrocuting." In some instances, Bagley would chain FV up before torturing her for Cook. During these sessions, Cook witnessed Bagley refuse to allow FV to use her "safe word" and ignore her pleas that he stop abusing her. Cook gave Bagley a hard drive containing sadomasochism and torture videos, including a video showing how to bury someone alive, which Bagley used to threaten FV so she would continue to submit to his demands. Cook, Bagley, and others continued this extreme course of torture until 2009, when medical personnel discovered the abuse after Bagley suffocated and electrocuted FV to the point of cardiac arrest, requiring emergency medical assistance and hospitalization.

Cook was charged with eight counts. He filed a motion to dismiss Count 2, sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a) and (b)(1), 1594, and 2, arguing section 1591 was unconstitutionally vague as applied to him, in violation of the Due Process Clause of the Fifth Amendment. Cook then pled guilty to Count 2 in a conditional agreement where he reserved the right to appeal any denial of his motion to dismiss. The government dismissed the other charges.

The district court denied Cook's motion to dismiss. The court held the statute was not unconstitutionally vague as applied to Cook because the plain language of the statute gave him adequate warning that he could be criminally liable for the actions alleged in the superseding indictment and the statute's mens rea requirement makes

it sufficiently narrow to avoid arbitrary enforcement. The court noted section 1591(a)(1) prohibits "the buying (obtaining) . . . of a person knowing that force, fraud, or coercion will be used to cause the person to engage in a commercial sex act" and found that language gave Cook adequate notice he could be held liable for "knowingly obtain[ing] (sexually tortur[ing] and ha[ving] sex with)" FV knowing force, fraud, or coercion was used to cause her to engage in commercial sex acts. R. Doc. 407, at 19, 21. The court found section 1591(a)(2) gave Cook adequate notice he could be held liable for receiving "things of value" from participating in this venture, namely, sex and pictures of sex acts. Finally, the court found Cook had notice he could be held liable for attempt (18 U.S.C. § 1594) to violate section 1591 and aiding and abetting (18 U.S.C. § 2) a violation of section 1591 for communicating with Bagley regarding sexual torture activities, witnessing and participating in torture of FV, and sharing ideas and videos with Bagley on how to torture FV and coerce her into compliance. Cook now appeals the denial of his motion to dismiss, arguing: (1) section 1591(a)(2) should not apply to purchasers of commercial sex acts, and (2) if it does apply to purchasers, section 1591(a)(2) is unconstitutionally vague as applied to him.[3]

## II. Discussion

Cook first argues that section 1591(a)(2) should not be applied to purchasers of commercial sex because Congress designed the statute to target only suppliers. We addressed a similar challenge to section 1591(a)(1) in United States v. Jungers, where we held that "§ 1591 applies to a purchaser of commercial sex acts who violates the statute's terms."[4] 702 F.3d 1066, 1075 (8th Cir.), cert. denied, 134 S. Ct. 167 (2013).

---

[3]Cook also challenges the court's ruling that sections 2 and 1591(a)(1) were not unconstitutionally vague as applied to him. As the district court's holding on section 1591(a)(2) is sufficient to sustain Cook's conviction, we need not address these other claims.

[4]The Jungers court reviewed two cases where the district courts granted the defendants' motions for judgment of acquittal after juries convicted the defendants of

While Jungers only concerned section 1591(a)(1), we find its reasoning applies with equal force to section 1591(a)(2). Section 1591 does not criminalize the act of engaging in commercial sex, but nothing in the text of section 1591(a)(2) or the overall language or context of the statute suggests Congress intended to exclude purchasers of commercial sex whose conduct otherwise violates the statute. See id. at 1070-75. Section 1591(a)(2) applies to a purchaser of commercial sex who violates its terms.

Cook next argues that applying section 1591(a)(2) to him as a purchaser makes the statute unconstitutionally vague, in violation of his Fifth Amendment right to due process of law. "We review de novo whether a penal statute . . . is void for vagueness under the Fifth Amendment." Birbragher, 603 F.3d at 484.

"The Fifth Amendment guarantees every citizen the right to due process. Stemming from this guarantee is the concept that vague statutes are void." United States v. Washam, 312 F.3d 926, 929 (8th Cir. 2002). A statute is void for vagueness if it: (1) "'fails to provide a person of ordinary intelligence fair notice of what is prohibited,'" or (2) "'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" Holder v. Humanitarian Law Project, 561 U.S. 1, 18 (2010) (quoting United States v. Williams, 553 U.S. 285, 304 (2008)); see also Washam, 312 F.3d at 929. "We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of

---

attempted sex trafficking of a minor. Id. at 1067. Cook argues that while the Jungers court was asked to consider whether section 1591 applies to purchasers of commercial sex acts, it "was not asked to determine whether this reading of § 1591 made the statute unconstitutionally void for vagueness as applied to consumers." But he concedes that "by finding the language of the statute 'clear,' and upholding the convictions, this Court implicitly determined that the statute was not vague."

-5-

others.'" Holder, 561 U.S. at 18-19 (quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)).

Section 1591(a) reads, in relevant part:

(a) Whoever knowingly–
   (1) in or affecting interstate or foreign commerce . . .
   recruits, entices, harbors, transports, provides, or obtains by
   any means a person; or
   (2) benefits, financially or by receiving anything of value,
   from participation in a venture which has engaged in an act
   described in violation of paragraph (1),
knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act . . . shall be punished as provided in subsection (b).

## A. Notice

We first consider whether section 1591(a)(2) gave Cook adequate notice that his conduct was criminal. Cook finds ambiguity in the phrase "anything of value," which the statute does not define, and argues he did not have notice that the sex acts and photographs he received through participation in this venture could constitute "things of value" under the statute.

Cook argues that interpreting a sex act to be a "thing of value" confuses the "product" of the venture (the sexual encounter) with the "benefit" of the venture (payment for the act) and that (a)(2) should be applied only to those traffickers who receive payment from purchasers for sexual encounters. He claims the district court failed to provide authority supporting its interpretation of "thing of value" under (a)(2). He also argues that the courts and Congress appear to be confused as to the statute's scope and thus it is unreasonable to expect a person of ordinary intelligence to be able to understand it and be on notice of what it prohibits. Cook challenges only the district court's interpretation of "anything of value" and does not contest that he

participated in a "venture," which the statute defines as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(c)(3).[5] We find his arguments fail.

Cook's distinction between the "product" and "benefit" of the venture is unconvincing, and he provides no authority in support of his contention that only those people who receive payment from the sale of the "product" are covered by (a)(2).[6] The phrase "anything of value" is extremely broad. Reading the phrase to include sex acts comports with both its ordinary meaning, see Knutson v. Brewer, 619 F.2d 747, 750 (8th Cir. 1980) (reading "thing of value" to include sodomy is not "startling or outlandish," as "[t]he words of the statute, simply as a matter of English, easily bear this meaning"), and its settled legal meaning. See Holder, 561 U.S. at 20-21 (statutes that raise vagueness concerns are those that tie criminal culpability to "'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings'" (quoting Williams, 553 U.S. at 306)). "Congress'[s] frequent use of 'thing of value' in various criminal statutes has evolved the phrase into a term

_____

[5]This definition is now at 18 U.S.C. § 1591(e)(5).

[6]Cook asserts, in passing, that Jungers suggested section 1591(a)(2) only applies to those traffickers who receive payments from purchasers and thus applying (a)(2) to his acts as a purchaser would conflict with Jungers. But the Jungers court did not have occasion to directly interpret section 1591(a)(2). The defendants in Jungers argued that section 1591(a)(1) applies exclusively to organized sex trafficking rings or ventures profiting from the illicit sex trade and not to individual acts of trafficking. 702 F.3d at 1071. The court, in rejecting this argument, merely distinguished between (a)(1) and (a)(2), noting that while "[t]o violate § 1591(a)(2), a trafficker must benefit 'financially or by receiving anything of value from participation' in a trafficking 'venture,'—defined as 'any group of two or more individuals associated in fact,' . . . [s]ection 1591(a)(1) is not subject to those same limitations." Id. Cook does not contest that he participated in a venture. Accordingly, his reliance on Jungers is misplaced.

of art which the courts generally construe to envelop[] both tangibles and intangibles." United States v. Petrovic, 701 F.3d 849, 858 (8th Cir. 2012) (alterations in original) (internal quotation marks omitted). "[V]alue is a subjective, rather than objective, concept where 'the focus of the . . . term is to be placed on the value which the defendant subjectively attaches' to what is sought to be received." Id. (ellipsis in original) (quoting United States v. Gorman, 807 F.2d 1299, 1305 (6th Cir. 1986)). In this case, Cook clearly attached value to the sexual acts, photographs, and videos he received. He traveled from St. Louis to Lebanon, Missouri, for sex, communicated with Bagley about torture methods to use in the videos and photographs Bagley sent him, and gave Bagley his own videos, photographs, and advice in exchange. See Knutson, 619 F.2d at 750 ("Obviously the act of sodomy was, as a matter of fact, a 'thing of value' to [the defendant], else he would not have demanded it.").

Cook finds it problematic that the district court did not cite case law defining a "thing of value" under section 1591(a)(2) to include sexual acts or photographs. But the statute's language gives notice of this application, and our court's case law also gave reason to expect section 1591 may be given this construction. See, e.g., Petrovic, 701 F.3d at 858 (holding that, in the context of the interstate extortionate threat statute, the district court did not err in instructing the jury that "things of value" could include sexual relationships and citing cases where "things of value" included, among other things, sexual favors, the time and attention of a woman, and anticipation of future sexual encounters); United States v. Griffin, 482 F.3d 1008, 1013 (8th Cir. 2007) (receiving and sharing child pornography files through a file-sharing network constitutes receipt of a "thing of value" for the purposes of a sentencing enhancement); Knutson, 619 F.2d at 749-50 (denying Fourteenth Amendment challenge to state's interpretation of "thing of value" to include obtaining sexual gratification, noting that "[t]he inclusion of the additional phrase 'thing of value' was clear notice that a non-monetary demand might come within the definition of the crime denounced"). "Although these cases differ in procedural postures and involve

different statutes than does the present case, we see no reason why a 'thing of value' under [section 1591] is more narrow than what the broad term of art encompasses in other contexts." Petrovic, 701 F.3d at 858.

With this guidance, we do not see merit in Cook's argument that the courts and Congress are uncertain about the statute's scope. In support of this point, Cook argues that while a person who purchases sex should be able to discern he or she is breaking some law, it is unlikely that person would be on notice he or she is violating section 1591. This type of reliance argument is unavailing. "When a person does an act that he well knows to be a violation of some law, and when a statute is later interpreted to cover his conduct in a way that does not do violence to the ordinary understanding of the English language, the [Fifth] Amendment is not offended." Knutson, 619 F.2d at 750; see also Washam, 312 F.3d at 931 (in a Fifth Amendment challenge, "we look to whether the statute gave adequate warning, under a specific set of facts, that the defendant's behavior was a criminal offense"); United States v. White, 882 F.2d 250, 252 (7th Cir. 1989) (citing Knutson, 619 F.2d at 750) (in a Fifth Amendment challenge, "[p]rovided that conduct is of a sort widely known among the lay public to be criminal . . . a person is not entitled to clear notice that the conduct violates a *particular* criminal statute. It is enough that he knows that what he is about to do is probably or certainly criminal"). A person of ordinary intelligence would reasonably understand that sexual acts, photographs, and videos—which are items that many people spend significant time, money, and effort pursuing and acquiring—could constitute "things of value." A person of ordinary intelligence would also reasonably understand that acquiring those items through participation in a commercial sex trafficking venture could result in criminal culpability. Section 1591(a)(2) gave Cook fair notice that he could be held liable for receiving "things of value," i.e., sexual acts, videos, and photographs, through participation in a commercial sex trafficking venture.

## B. Enforcement

Our second consideration is whether section 1591(a)(2) provides sufficient guidelines so as not to encourage arbitrary or discriminatory enforcement. "Congress must provide minimal requirements to guide law enforcement . . . because [w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Birbragher, 603 F.3d at 489 (alterations in original) (internal quotations marks and citations omitted). Cook argues this application is an arbitrary expansion of the statute's reach, as the statute has been in place since 2000 but the government only started using it to prosecute purchasers in 2009. He claims this is an improper attempt by the government "to shape § 1591 to fit its litigative strategies or its political agenda," which should be prohibited absent a clear directive from Congress that the statute extends to purchasers.

As we find section 1591(a)(2)'s plain language makes clear that Congress intended to include purchasers of commercial sex acts who violate the statute's terms, this argument fails. See Jungers, 702 F.3d at 1069. Due process bars courts from retroactively applying a new construction of a criminal statute where it was not previously clear the statute authorized that construction, but there is no bar where the statute, "standing alone . . . made it reasonably clear at the relevant time that the defendant's conduct was criminal." United States v. Lanier, 520 U.S. 259, 266-67 (1997). Applying the statute to purchasers of commercial sex does not encourage arbitrary enforcement.

## III. Conclusion

For these reasons, we find section 1591(a)(2) is not unconstitutionally vague as applied to Cook's conduct and affirm the district court's denial of his motion to dismiss.

_____