# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-3832

_____

United States of America

*Plaintiff - Appellee*

v.

Lee Andrew Paul

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 20, 2017
Filed: March 22, 2018

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Lee Paul of three counts of commercial sex trafficking in violation of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1591(a). The district court[1] sentenced him to 396 months imprisonment. Paul appeals, arguing

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

that the evidence was insufficient to support each count of conviction, that each count in the superseding indictment contained multiple crimes and was therefore duplicitous, and that the district court's jury instructions defining "coercion" and "fraud" rendered § 1591(a) void for vagueness as applied.  We affirm.

## I.  The Statute

The statute primarily at issue, 18 U.S.C. § 1591(a) (2012), provides:

(a) Whoever knowingly--

(1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Subsection (e)(2) defines "coercion" to mean:

(A) threats of serious harm to or physical restraint against any person;

(B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

-2-

(C) the abuse or threatened abuse of law or the legal process.

"Commercial sex act" is defined in subsection (e)(3) as "any sex act, on account of which anything of value is given to or received by any person." "Serious harm" is defined in subsection (e)(4) to mean:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

The government need not prove "the defendant knew that the person had not attained the age of 18 years" if the defendant "had a reasonable opportunity to observe" the victim. § 1591(c). An attempt to violate § 1591(a) is "punishable in the same manner as a completed violation." § 1594(a).[2]

## II. Sufficiency of the Evidence

We review "the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Tillman, 765 F.3d 831, 833 (8th Cir. 2014) (quotation omitted). Reversal is merited "only where no reasonable jury could find all the [crime's] elements beyond

---

[2]Congress amended the TVPA in the Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, §§ 108(a), 118(b), 129 Stat. 227, 238-39, 247 (codified as amended at 18 U.S.C. § 1591). This opinion quotes and applies the prior version of the statute that Paul was convicted of violating.

a reasonable doubt." United States v. Cole, 721 F.3d 1016, 1021 (8th Cir. 2013) (quotation omitted).

Viewing the trial evidence from this perspective, Paul encountered victim A.S., then age nineteen, at a hotel in April 2013 and persuaded her to work for him as a prostitute, telling her the lifestyle was fun and she could make a lot of money. A.S. placed advertisements for sex acts on Backpage.com; Paul rented hotel rooms where A.S. met customers who responded to the ads. Paul collected all the money A.S. received from customers. He bought A.S. food, alcohol, and drugs, and prohibited her from having a boyfriend or seeing men who were not customers.

Government witness D.R. testified that, in May 2013, she was paying Paul to drive her to customers who responded to her Backpage.com ads. Paul traveled to Rochester, Minnesota with A.S. and D.R. and rented a motel room to see customers. While in Rochester, looking to recruit a new prostitute, Paul took D.R. to his cousin's home where they pilfered the phone number of victim Z.S., who Paul knew was having sex with his cousin. At Paul's direction, D.R. texted Z.S., inviting her to a party. Z.S. and her friend, victim K.J., met Paul and D.R. at a McDonald's. D.R. testified the girls looked young and admitted after they were high that Z.S. was twelve years old and K.J. was sixteen. Paul "didn't really care" that the girls were so young. The group traveled to the Rochester motel in Paul's car, where Z.S. agreed to work for him.

Paul then drove the group to the Twin Cities. He argued with A.S. along the way, yelling at her and "getting in her face." A frightened Z.S. decided she did not want to work for Paul and wanted to go home; she showed K.J. a text saying she was scared and asked K.J. not to leave her. In the Twin Cities, Paul took Z.S., K.J., and A.S. to a motel. He told K.J. he would make her a prostitute if she performed a sex act with him; they performed oral sex on each other in his car. Paul and A.S. told K.J. she would prostitute for a customer, but the customer never showed up after the

-4-

police arrived on an unrelated matter. Z.S. testified that Paul told her he would kill her and K.J. and "leave [them] on the side of Minneapolis." Paul drove the group to another motel, where he raped Z.S. while A.S. and K.J. stayed in the car.

Back in the car, A.S. told Paul her mother would take A.S. back to her parents' house in Alexandria, Minnesota. Angry, Paul told A.S. to take K.J. and Z.S. with her, have them meet customers, and "show them how to make money." K.J. called her mother on Z.S.'s phone, went to the motel's front desk to call the police, and encountered a plainclothes officer. A.S. alerted Paul, who fled. A.S. went to Alexandria with Z.S. and advertised Z.S. on Craigslist.com. Z.S. engaged in sex acts with two customers who responded to the ads. Text messages from Paul to Z.S. congratulated her on the first sex transaction, telling her, "I see you catch on pretty fast that's good." Paul texted A.S., telling her "to stay off the road as much as possible because you really don't want to get pulled over while having a 12 year old in the car." When Paul attempted to collect the money Z.S. made at A.S.'s home in Alexandria, A.S. refused. Law enforcement arrested Paul at A.S.'s home.

The superseding indictment charged Paul with sex trafficking Z.S. knowing that force, fraud, or coercion would be used and knowing she was under the age of fourteen (Count I), see § 1591(b); sex trafficking K.J. knowing that force, fraud, or coercion would be used and knowing she was under the age of eighteen (Count II); and sex trafficking A.S. knowing that force, fraud, or coercion would be used (Count III). Paul argues the evidence was insufficient to convict him of each count. We disagree.

**Z.S.** Paul argues the evidence was insufficient to support his conviction on Count I because Z.S. did not engage in any commercial sex acts while in his company, and he did not place the online advertisements marketing Z.S. to potential customers or arrange the two commercial sex acts. We conclude the evidence was sufficient to support Paul's conviction for trafficking Z.S. Paul threatened Z.S. at one

motel, raped her at another, ordered A.S. to take Z.S. to Alexandria and have her meet customers, and congratulated Z.S. after her first commercial sex act. The jury could reasonably find that Paul "harbored" Z.S. or benefitted from a "venture" with A.S. that harbored Z.S., knowing that fraud, force, or coercion would be used to cause Z.S. to engage in commercial sex acts, or that Z.S. was under the age of fourteen and would be caused to engage in commercial sex acts. See United States v. Jungers, 702 F.3d 1066, 1074 n.6 (8th Cir.) (the TVPA "reflects agnosticism . . . about who causes the child to engage in the commercial sex act"), cert. denied, 134 S. Ct. 167 (2013). The government presented ample evidence that Paul knew Z.S. was under the age of fourteen.

**K.J.** Paul argues the evidence was insufficient to support his conviction on Count II because K.J. did not engage in any commercial sex acts. However, § 1591(a) criminalizes knowingly undertaking activities, such as harboring and transporting a minor, knowing that force, fraud, or coercion will be used to cause a person to engage in a commercial sex act, or knowing that a person under the age of eighteen will be caused to engage in a commercial sex act. As the Seventh Circuit explained:

> Congress chose the *future* tense -- a choice that is inconsistent with the notion that a commercial sex act must already have happened before a violation can be shown. . . .
>
> The more logical reading of the phrase "knowing . . . the person . . . will be caused to engage in a commercial sex act" is that it describes the acts that the defendant intends to take -- that is, that he means to "cause" the minor to engage in commercial sex acts.

United States v. Wearing, 865 F.3d 553, 556 (7th Cir.), cert. denied, 138 S. Ct. 522 (2017); accord Jungers, 702 F.3d at 1073-74 ("[i]n many, if not all cases, the commercial sex act is still in the future at the time the purchaser entices, transports,

obtains, or otherwise traffics a child in violation of § 1591"); United States v. Brooks, 610 F.3d 1186, 1197 & n.4 (9th Cir. 2010). There was substantial evidence Paul "harbored" K.J.. knowing that fraud, force, or coercion would be used to cause K.J. to engage in commercial sex acts, or that K.J. was under the age of eighteen and would be caused to engage in commercial sex acts.

**A.S.** Paul argues there was insufficient evidence to support his conviction on Count III because A.S.'s testimony was entirely silent as to any particular commercial sex act she would or would not have performed because of Paul's force, fraud, or coercion. A.S. testified that Paul repeatedly sexually assaulted her, pushed her around, slammed her head against a wall when she was with a man who was not a customer, took A.S.'s phone, ID, and money when she attempted to leave, and threatened to tell A.S.'s mother about her prostitution. The jury was entitled to credit A.S.'s testimony; credibility determinations are "uniquely within the province of the trier of fact." United States v. Geddes, 844 F.3d 983, 992 (8th Cir. 2017) (quotation omitted). Victim A.S.'s testimony was sufficient to permit a reasonable jury to find that Paul used force, fraud, or coercion to cause her to engage in a commercial sex act. See United States v. Bell, 761 F.3d 900, 907-08 (8th Cir.), cert. denied, 135 S. Ct. 503 (2014).

### III. The Duplicity Issue

Paul argues that each of the three counts in his indictment was duplicitous. "Duplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997) (quotation omitted), cert. denied, 523 U.S. 1065 (1998). The problem with a duplicitous indictment is that "the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994), cert. denied, 513 U.S. 1156 (1995). Paul argues that each count "conflated" multiple sex trafficking offenses.

A December 2014 amendment to Rule 12 of the Federal Rules of Criminal Procedure provides that a claim of indictment duplicity "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(i). Paul made no pretrial motion and did not otherwise argue to the district court that any count was duplicitous. Amended Rule 12(c)(3) provides that "a court may consider an issue not timely raised under Rule 12(b)(3) only upon a showing of 'good cause,' which requires a showing of cause and prejudice." United States v. Fry, 792 F.3d 884, 888 (8th Cir. 2015) (citation omitted). In Fry, we declined to excuse the defendant's failure to timely raise an issue of multiplicity, a practice which presents the danger of multiple punishments. Paul argues that Rule 12(c)(3) gives us discretion to review his untimely claim of duplicity and urges us to exercise that discretion because more severe prejudice results from duplicity -- conviction by a non-unanimous jury. In his reply brief, Paul concedes that his only showing of good cause would be the ineffective assistance of his trial counsel, an issue we address on direct appeal "only where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." United States v. Ramirez-Hernandez, 449 F.3d 824, 826-27 (8th Cir. 2006), cert. denied, 528 U.S. 1161 (2000).

We decline to resolve whether Rule 12(c)(3) bars this issue because we conclude that the district court did not err, much less plainly err, in failing to address the issue of duplicity *sua sponte*. We explained the principle governing our conclusion in United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999):

> Duplicity concerns are not present, however, when the underlying statute is one which merely enumerates one or more ways of committing a single offense. In that case, all of the different ways of committing that same offense may be alleged in the conjunctive in one count, and proof of any one of the enumerated methods will sustain a conviction.

In § 1591(a), many of what Paul labels separate crimes are in fact alternative ways of committing a single offense -- the defendant violates the statute if he knowingly "recruits, entices [etc.]," or "benefits . . . from participation," knowing that "force, threats of force, fraud, coercion . . . or any combination of such means" will be used. The jury did not need to unanimously agree on which of those means Paul used, so long as each juror found he used at least one.

A more ambiguous issue of duplicity is reflected in the title of § 1591: whether two more distinct types of prohibited commercial sex trafficking -- knowing that force, fraud, or coercion will be used to cause any person, including an adult, to engage in a commercial sex act, and knowing that recruiting (etc.) will cause a child to engage in such an act -- are separate crimes. But here, the district court eliminated this risk of non-unanimity by instructing the jury, and reflecting on the verdict form for Count I (Z.S.) and for Count II (K.J.), that it must make separate findings whether Paul committed (i) "the crime of sex trafficking of a minor," and (ii) "the crime of sex trafficking by use of force, fraud, or coercion." In convicting Paul of Counts I and II, the jury unanimously found Paul guilty of both offenses against both victims. Thus, there was no duplicity. See United States v. Stegmeier, 701 F.3d 574, 581 (8th Cir. 2012), cert. denied, 134 S. Ct. 221 (2013).

## IV. The Vagueness Issue

The district court's jury instructions defined "fraud," a term not defined in the statute, as "deception practiced in order to induce another." The court defined "coercion" and "serious harm" as those terms are defined in subsections 1591(e)(2)(A)-(B) and (e)(4) of the TVPA. Paul argues the instructions defining fraud and coercion rendered the statute void for vagueness as applied to him, a contention not raised in the district court that we review for plain error. See Fed. R. Crim. P. 52(b). Paul must show: "(1) an error, (2) that was plain, (3) affects substantial rights, and (4) [that] the error seriously affects the fairness, integrity or

public reputation of judicial proceedings." United States v. Hansen, 791 F.3d 863, 870 (8th Cir.) (quotations omitted), cert. denied, 136 S. Ct. 698 (2015).

"A statute is void for vagueness if it: (1) fails to provide a person of ordinary intelligence fair notice of what is prohibited, or (2) it is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Cook, 782 F.3d 983, 987 (8th Cir.) (quotations omitted), cert. denied, 136 S. Ct. 262 (2015). For multiple reasons, we conclude there was no plain error. First, as the jury convicted Paul of sex trafficking of a minor in Counts I and II, and as the evidence that he used force to cause A.S. to engage in a sex trafficking act was overwhelming (Count III), the allegedly vague instructions defining the alternative means of fraud and coercion did not affect his substantial rights. Second, the district court defined fraud consistent with the common meaning of that term, and instructed the jury to apply the statutory definition of coercion. These definitions provided fair notice of what is prohibited. See United States v. Maynes, 880 F.3d 110, 113-14 (4th Cir. 2018). Third, the terms fraud and coercion as defined clearly encompassed the conduct of Paul at issue; a party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Cook, 782 F.3d at 987 (quotation omitted). Finally, evaluating the instructions "not in isolation but in the context of the entire charge," Jones v. United States, 527 U.S. 373, 391 (1999), they clearly instructed that the jury must find Paul used fraud or coercion "to cause [each victim] to engage in a commercial sex act," consistent with the specific purpose of the statute.

The judgment of the district court is affirmed.

_____