# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2798
_____

United States of America

*Plaintiff - Appellee*

v.

Zam Lian Mung

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Rapid City
_____

Submitted: October 23, 2020
Filed: March 1, 2021
_____

Before COLLOTON, GRASZ, and STRAS, Circuit Judges.
_____

GRASZ, Circuit Judge.

A jury convicted Zam Lian Mung for the attempted commercial sex trafficking of a minor. The district court[1] sentenced Mung to 120 months of

---

[1]The Honorable Jeffrey L. Viken, then Chief Judge, now United States District Court Judge for the District of South Dakota.

imprisonment and imposed a $5,000 special assessment. Mung challenges his indictment, the jury instructions, and the special assessment. We affirm.

## I. Background

In August 2018, as part of a sting operation, law enforcement posted advertisements on a website known for offering prostitution, escort, and sex-related services. For purposes of the sting, the officers posed as a truck driver who would facilitate sex with his 15-year-old stepdaughter. After Mung responded to the advertisement, he and law enforcement exchanged phone calls and texts. Although the advertisement described an 18-year-old, law enforcement twice told Mung that she was only 15. Mung ultimately agreed to pay $150 for the sexual encounter. Officers arrested Mung outside the motel where they had arranged to meet.

A grand jury indicted Mung on one count of attempted commercial sex trafficking of a child in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(2), and 1594(a), and one count of attempted enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b). A jury convicted Mung on the first count and acquitted him on the second count. The district court sentenced Mung to 120 months of imprisonment. The district court also imposed a $5,000 special assessment under the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 3014.

## II. Discussion

On appeal, Mung advances three primary arguments. First, he contends the district court improperly allowed a reckless-disregard mens rea to attach to the age of the person solicited. Second, Mung challenges a jury instruction's use of the term "sex trafficking," claiming the term inaccurately described his offense and was unfairly prejudicial. Finally, he challenges the imposition of the $5,000 special assessment, claiming he was indigent and therefore not eligible under the statute. We consider each argument in turn.

## A. Mens Rea

Mung first argues we should vacate his conviction because the indictment and the instructions to the jury improperly allowed a mens rea of reckless disregard as to the age of the child being offered for the commercial sex act. Before addressing the merits of his argument, we note that Mung concedes he never objected to the reckless-disregard standard in his indictment or in the jury instructions. Because Mung failed to make a timely objection to the indictment, Federal Rule of Criminal Procedure 12(c)(3) arguably forecloses our review of his argument that it was defective. *See United States v. Fogg,* 922 F.3d 389, 391 (8th Cir. 2019) (explaining that a defendant who fails to object to an indictment on the basis that it is defective must show "good cause" to raise the issue for the first time on appeal). Mung has not demonstrated good cause for his failure to timely object to the indictment. But even if he could show good cause, we would review his argument under the same plain error standard with which we review his challenge to the jury instructions. *See United States v. Gilmore*, 968 F.3d 883, 887 (8th Cir. 2020). "Under this standard, [Mung] must establish that there was an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Mung has failed to show the district court obviously erred by applying the reckless-disregard standard. We begin by looking at § 1591's plain language. *See United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006). It relevantly states:

(a) Whoever knowingly--

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . .

\*\*\*\*

*knowing, or,* except where the act constituting the violation of paragraph (1) is advertising, *in reckless disregard of the fact*, that means of force, threats of force, fraud, coercion described in subsection (e)(2),

or any combination of such means will be used to cause the person to engage in a commercial sex act, *or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act*, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a)(1) (emphasis added).

Both the indictment and instructions provided that Mung could be convicted for attempting to solicit a person under 18, while knowing or recklessly disregarding that the person was a minor and would be caused to engage in a commercial sex act. Mung argues this was erroneous because the reckless-disregard standard only applies when coupled with an allegation that force, the threat of force, fraud, or coercion compelled the child to engage in the act. Because the indictment did not specify any of these means, Mung contends only actual knowledge could satisfy a conviction.

Mung's interpretation fails for several reasons. First, it "runs afoul of the 'cardinal principle' of interpretation that courts 'must give effect, if possible, to every clause and word of a statute.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). If the reckless-disregard mens rea applies only to the "force, fraud, or coercion" clause as Mung contends, then the "or that" immediately before the phrase "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act," is rendered meaningless. Mung has not refuted the presumption that Congress intended "or that" to link the reckless disregard mens rea to the age criteria. *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (examining two words, "established and," and explaining that under "the so-called surplusage canon," there is a "presumption that each word Congress uses is there for a reason").

-4-

Second, Mung's interpretation of § 1591(a) makes little sense when viewed against the rest of the statute. "General principles of statutory construction provide that we look to the structure of the statute and the language surrounding the term to ascertain its meaning." *United States v. Kowal*, 527 F.3d 741, 746 (8th Cir. 2008). Here, our interpretation of the meaning of the mens rea set forth in subsection (a) of the statute is informed by subsection (c), which relieves the government from proving the "defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years" when the facts demonstrate "the defendant had a reasonable opportunity to observe the person . . . solicited." 18 U.S.C. § 1591(c). Congress added the "recklessly disregarded" language to subsection (c) through its 2015 amendments. Justice for Victims of Trafficking Act of 2015, Publ. L. No. 114-22, § 108(a)(3)(B), 129 Stat. 227, 238–39. That change indicates Congress itself interpreted subparagraph (a) as generally permitting convictions when a defendant knows *or* recklessly disregards the age of the minor.

Finally, numerous courts have interpreted the reckless disregard mens rea as applying to the age criteria. As we have explained, "Congress amended § 1591 in 2008 to prohibit such conduct 'knowing, *or in reckless disregard of* the fact . . . that the person has not attained the age of 18 years.'" *United States v. Chappell*, 665 F.3d 1012, 1013–14 (8th Cir. 2012) (alteration in original) (quoting prior version of 18 U.S.C. § 1591(a)); *see also United States v. Warren*, 491 F. App'x 775, 778 (8th Cir. 2012) (unpublished per curiam) (explaining that a defendant violates § 1591 if he commits the offense knowing or in reckless disregard of the fact the person had not attained the age of 18).[2] Other circuits have also recognized that the government could prove a violation by showing a defendant recklessly disregarded the subject's minor status. *See United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019); *United States v. Banker*, 876 F.3d 530, 534–36 (4th Cir. 2017); *United States v.*

---

[2]Mung claims we have since adopted an alternative interpretation in *United States v. Paul*, 885 F.3d 1099, 1104–05 (8th Cir. 2018). But the court in *Paul* was considering the issue of whether charges against the defendant were duplicitous, and it did not discuss applicability of the reckless disregard standard. *Id.* We do not read *Paul* to provide any guidance on the issue before us.

*Garcia-Gonzalez*, 714 F.3d 306, 313 n.4 (5th Cir. 2013); *United States v. Robinson*, 702 F.3d 22, 31–34 (2d Cir. 2012); *see also United States v. Vanderhorst*, 2 F. Supp. 3d 792, 797–800 (D.S.C. 2014) (expressly rejecting an argument that the "reckless disregard" modifies only the "force, fraud, or coercion" clause, and providing a thorough and convincing grammatical explanation for why the reckless-disregard clause also modifies the age-criteria clause).

While some of those cases interpreted the statute before its 2015 amendment, *Whyte* involved the same version of the statute at issue here. 928 F.3d at 1322. Like pre-amendment courts interpreting the statute, the Eleventh Circuit explained that the government could satisfy § 1591(a)'s mens rea requirement as to the victim's age by proving knowledge or reckless disregard. *Id.* at 1328. We agree with this conclusion. Inserting the phrase "except where the act constituting the violation of paragraph (1) is advertising" immediately before the phrase "in reckless disregard of the fact that," certainly made the statute more cumbersome. But viewed in the context of the other changes, it appears Congress intended the amendment to impact the mens rea only in situations where the actus reus was advertising. The government did not charge, nor did the jury convict, Mung for advertising a commercial sex act. Instead, Mung was convicted for attempting to recruit, entice, obtain, patronize, or solicit a minor for a commercial act. Thus, we hold it was proper to use the reckless-disregard standard.

## B. Using "Sex Trafficking" as a Descriptor

We next consider Mung's argument that the district court erred by using the label "sex trafficking" when describing the charged crime to the jury in Instruction No. 4. "We review a district court's formulation of jury instructions for an abuse of discretion and its interpretation of law *de novo*." *United States v. Spotted Horse*, 916 F.3d 686, 691 (8th Cir. 2019) (quoting *United States v. Farah*, 899 F.3d 608, 614 (8th Cir. 2018)). "We will not reverse if the instructional error is harmless." *Id.*

The challenged instruction was entitled "Attempted Commercial Sex Trafficking." Besides setting forth the elements, the instruction stated: "To find Mr. Mung guilty of the offense of attempted commercial *sex trafficking* as charged in count 1 of the indictment, the government must prove all the essential elements beyond a reasonable doubt." (emphasis added). Relying largely on *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008), Mung contends it was erroneous to use the phrase "sex trafficking" because the phrase does not appear in the text of § 1591(a), but instead only in the statutory heading. Mung further argues the error was not harmless because the phrase is pejorative, unfairly prejudicial, and misleading. We reject both assertions.

To begin, Mung identifies no case law to suggest that a district court cannot use a statutory title as a descriptor to the jury. Mung's reliance on *Piccadilly Cafeterias* for this proposition is misplaced. While the Supreme Court observed the general principle that a "heading cannot substitute for the operative text of the statute," it went on to explain that the titles and headings of a statute may be used as tools to resolve doubt regarding a statute's meaning. *Piccadilly Cafeterias*, 554 U.S. at 47 (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)). Here, including the phrase "sex trafficking" did not conflict with or substitute for § 1591's operative text.

Additionally, we are unconvinced using the phrase "sex trafficking" harmed Mung's defense. The descriptor did not modify any elements the jury had to consider. And even if we were to accept Mung's premise that attempting to solicit a fictional prostitute during a government sting operation contradicts the common meaning of "sex trafficking," it is unclear whether labelling the charged offense "sex trafficking" would make a jury more likely to convict him. It is just as plausible to conclude that using the label could make a jury *less likely* to convict Mung. A juror might conclude that the government failed to demonstrate Mung was a "sex trafficker," as the phrase is commonly understood, even though there was evidence supporting each necessary element.

In sum, Mung has failed to convince us that the district court abused its discretion by including the phrase "sex trafficking" in its instruction to the jury.

## C. Monetary Assessment

Next, we address Mung's challenge to the $5,000 special assessment under 18 U.S.C. § 3014. He argues the district court failed to follow our precedent in deciding whether he counted as a "non-indigent person" and thus was statutorily eligible for the assessment. He also suggests that an assessment was improper because there was no "real" victim in this case on account he solicited sex from a fictional "minor" created for purposes of a sting. Both arguments lack merit.

Under § 3014(a), courts must "'assess an amount of $5,000 on any non-indigent person' convicted of specified offenses relating to human trafficking and sexual exploitation." *United States v. Kelley*, 861 F.3d 790, 799 (8th Cir. 2017) (quoting 18 U.S.C. § 3014(a)). A defendant must establish his inability to pay the fine, and thus his indigency, in order to escape the otherwise-mandatory assessment. *See id.* at 800–01 & n.5. We have instructed courts to look to "both a defendant's current financial situation and his ability to pay in the future" when deciding if he has met this burden. *Id.* at 801. "The indigence determination under § 3014 is a fact issue . . . we . . . review for clear error." *Id.*

Here, Mung's Presentence Investigation Report determined Mung had $8,000 in his bank account and no debt or liabilities. At sentencing, Mung did not challenge the accuracy of this information. Therefore, the district court did not clearly err in deciding Mung failed to carry his burden to show an inability to pay the assessment at the time of sentencing.

Mung argues the district court's exclusive focus on Mung's financial situation at sentencing, without considering his ability to pay in the future, violates *Kelley*'s instruction to consider both time periods. This argument misunderstands *Kelley*'s reasoning. In *Kelley*, the defendant did not have the ability to pay the assessment at

sentencing as evidenced by his slight negative net worth. 861 F.3d at 802. But the district court decided against indigency, in part because it believed Kelley could prospectively make money in order to pay the assessment. *Id.* We affirmed that approach, reasoning, that in similar indigent determinations, the defendant must "prov[e] both his inability to pay at the time of sentencing and that he is 'not likely to become able to pay a fine upon his release from his term of imprisonment.'" *Id.* at 801 (quoting *United States v. Herron*, 539 F.3d 881, 888 (8th Cir. 2008)). Within this context, we directed courts to consider a defendant's current and future ability to pay the assessment. We do not interpret this direction to apply in situations like this, where the evidence demonstrated Mung *could* pay at the time of sentencing.

This leaves only Mung's argument that it was improper to impose an assessment in his situation because there was no actual "victim." Because Mung raises this argument for the first time on appeal, we review for plain error. *See Gilmore*, 968 F.3d at 887.

Mung has not shown error, let alone an obvious one, as is necessary to reverse under the plain error standard. *See id.* He has failed to provide any authority supporting his theory that an assessment cannot stand without a specific victim. And we see no indication in the statute that Congress desired such a result. Section 3014(a) directs courts to assess $5,000 "on *any* non-indigent person . . . convicted of an offense under" any of several chapters of the United States Code, including chapter 77. 18 U.S.C. § 3014(a) (emphasis added). Mung's conviction falls within that chapter. Also in chapter 77, Congress expressly directed that "[w]hoever attempts to violate section . . . 1591 shall be punishable in the *same manner* as a completed violation of that section." 18 U.S.C. § 1594(a) (emphasis added). The text of these statutes reveals congressional intent for courts to assess $5,000 on non-indigent defendants who attempted to participate in the sex trafficking of minors. Finally, Congress's decision to direct assessments to a general victims' fund, as opposed to the offense's specific victim, *see* 18 U.S.C. § 3014(c), undermines Mung's contention that the absence of a true victim vitiates the purpose of the assessment. For these reasons, we affirm the $5,000 assessment.

### III. Conclusion

We affirm the judgment of the district court.

_____