20-3520-cr (L)
*United States v. Raniere*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2021

No. 20-3520-cr (L); 20-3789-cr (Con)

UNITED STATES OF AMERICA,
*Appellee,*

v.

KEITH RANIERE, also known as Vanguard, and CLARE BRONFMAN,
*Defendants-Appellants,*

ALLISON MACK, KATHY RUSSELL, LAUREN SALZMAN, and NANCY
SALZMAN, also known as Prefect,
*Defendants.*[1]

On Appeal from the United States District Court
for the Eastern District of New York

ARGUED: MAY 3, 2022
DECIDED: DECEMBER 9, 2022

---

[1] The Clerk of Court is directed to amend the caption as set forth above.

Before: CALABRESI, CABRANES, and SULLIVAN, *Circuit Judges*.

_____

Following a jury trial before the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*), Defendant Keith Raniere was convicted of numerous crimes related to his leadership of two organizations, a self-styled executive coaching and self-help organization called NXIVM and a secret society called DOS. On appeal, Raniere challenges his convictions for sex trafficking crimes, in violation of 18 U.S.C. § 1591. At the center of his appeal is the meaning of "commercial sex act," which Section 1591 defines as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Raniere principally argues that to qualify as a "commercial sex act," there must be a monetary or financial component to the "[]thing of value" that is given or received and the relevant sexual exploitation must be for profit. He contends that evidence the Government submitted at trial showing that individuals received benefits, such as privileged positions within an organization, are insufficient to sustain his sex trafficking convictions. We conclude that Section 1591 requires neither that a "[]thing of value" have a monetary or financial component nor that the sexual exploitation be conducted for profit. Accordingly, we AFFIRM the October 30, 2020 judgment as it concerns Raniere's sex trafficking offenses: the sex trafficking conspiracy (Count 5), the sex trafficking of

2

Nicole (Count 6), the attempted sex trafficking of Jay (Count 7), and the racketeering act of sex trafficking of Nicole (Act 10A).

─────────

> TANYA HAJJAR, Assistant United States Attorney (Kevin Trowel, Assistant United States Attorney, *on the brief*), for Breon Peace, United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee United States of America.*
>
> JOSEPH M. TULLY, Tully & Weiss Attorneys at Law, Martinez, CA (Jennifer Bonjean, Bonjean Law Group, PLLC, New York, NY, *on the brief*), *for Defendant-Appellant Keith Raniere.*

─────────

JOSÉ A. CABRANES, *Circuit Judge*:

After a six-week jury trial, Keith Raniere was convicted in the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) of numerous counts related to his leadership of two organizations: a self-styled executive coaching and self-help organization called NXIVM and a secret society called "DOS," an acronym for "Dominus Obsequious Sororium," a phrase that roughly translates to "Lord/Master of the Obedient Female Companions."  At trial, the Government presented evidence that

Raniere led both entities as pyramid organizations, and that he—alongside his "inner circle"—committed, attempted, or conspired to commit various crimes, including sex trafficking, forced labor, identity theft, wire fraud, racketeering, sexual exploitation of a minor, possession of child pornography, and obstruction of justice. During the lengthy trial, the Government also presented evidence that members of the organizations recruited and groomed sexual partners for Raniere, and that numerous women were coerced to engage in nonconsensual sexual acts with Raniere.

On appeal, Raniere raises numerous challenges to his various convictions. By summary order issued on the same day as this opinion, we dispose of most of Raniere's arguments (along with the appeal of Raniere's co-defendant, Clare Bronfman). We write separately here to address Raniere's arguments concerning his sex trafficking convictions under 18 U.S.C. § 1591.

Raniere's arguments turn on the meaning of "commercial sex act," which the statute defines as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). He principally argues that to qualify as a "commercial sex act," there must be a monetary or financial component to the "[]thing of value" that is given or received, and the sexual exploitation must be for profit. We conclude that the statute has no such

4

requirement.  Accordingly, we AFFIRM the District Court's judgment concerning his sex trafficking convictions.[2]

## I. BACKGROUND[3]

In or around 2003, Raniere founded an organization called NXIVM, a self-styled executive coaching and self-help organization. New members paid thousands of dollars to attend self-help workshops.  NXIVM members referred to Raniere as "Vanguard."

In 2015, Raniere created the secret society "DOS," which was structured as a pyramid, with Raniere at the head, followed by first-line "masters" and their subordinate "slaves."  "Slaves" were expected to be obedient to their "masters."

---

[2] In particular, through this opinion, we AFFIRM his convictions for the sex trafficking conspiracy (Count 5), the sex trafficking of Nicole (Count 6), the attempted sex trafficking of Jay (Count 7), and the racketeering act of sex trafficking of Nicole (Act 10A).

[3] Because Raniere appeals his convictions following a jury trial, we recite the facts from the trial evidence "in the light most favorable to the prosecution." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) ("The reviewing court considers only the 'legal' question 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also, e.g.*, *United States v. Napout*, 963 F.3d 163, 168 (2d Cir. 2020) (noting that "[b]ecause appellants . . . appeal their convictions following a jury trial, we recount the facts viewing the evidence adduced in the district court in 'the light most favorable to the government, crediting any inferences that the jury might have drawn in its favor'" (quoting *United States v. Rosemond*, 841 F.3d 95, 99–100 (2d Cir. 2016))).

Apart from Raniere, all DOS members were women. And Raniere's identity as the head of DOS was initially concealed from newly recruited "slaves," who were told that the organization was a "women's-only secret society."

DOS "masters" recruited slaves mostly from NXIVM and targeted women who were experiencing difficulties in their lives. To join, DOS recruits were required to provide "collateral" to prove their commitment to the organization. "Collateral" took many forms, including sexually explicit photographs and videos of themselves, rights to financial assets, and letters containing damaging accusations—whether true or untrue—about family members and friends.

DOS "slaves" were expected to provide their "masters" with services called "acts of care," which included buying them groceries, editing videos, cleaning, and organizing. Each "slave" was expected to provide about an hour of work per week for her "master" as her "normal contribution." In some cases, "masters" assigned their "slaves" to engage in sexual conduct with Raniere and implied that collateral might be released if the salves refused. DOS "slaves" were also required to be branded with a symbol that, unbeknownst to them, consisted of Raniere's initials. During the branding ceremony, participants were normally required to be nude and to say, "Master[,] please brand me. It would be an honor, an honor that I want to wear for the [re]st of my life."

6

Allison Mack—a DOS "master" and one of Raniere's co-defendants who pleaded guilty to racketeering and racketeering conspiracy—recruited Nicole[4] to join DOS as a "slave" in February 2016. As part of that process, Mack asked that Nicole provide "collateral." Nicole provided a series of letters she wrote falsely alleging sexual abuse by her father and other damaging accusations, as well as a sexually explicit video of herself. She was later required to provide additional "collateral," including credit card authorizations and the right to her grandmother's wedding ring.

Mack subsequently "assigned" Nicole to contact Raniere and tell him that she would do "anything that he asked." On May 31, 2016—while Nicole and Mack were together in Mack's house—Raniere called Mack, and Mack instructed Nicole to go outside so that Nicole would meet Raniere "across the grass" from the house's backdoor. Raniere subsequently blindfolded Nicole, led her into a car, and drove her to a house. He then led Nicole—still blindfolded—through some trees and inside a building. There, he instructed her to undress and tied her to a table. Another person in the room, whose identity was unknown to Nicole, performed oral sex on Nicole. Nicole subsequently told Mack about the incident, and Mack called Nicole "really brave."

Nicole had additional sexual encounters with Raniere during her time as a DOS "slave." Mack regularly required Nicole and other

---

[4] The District Court ordered that during trial, certain witnesses were only to be referred to by first name or pseudonym.

"slaves" to pose for nude photographs, including close-up photographs of their genitalia. Nicole also performed uncompensated work for Mack, including transcribing tapes and reviewing articles.

Mack also recruited another "slave," India, who in turn recruited a second-order "slave" named Jay. Jay provided "collateral" to India, including a sex tape and a video describing abuse to which she was subjected as a child. She provided further "collateral" on a monthly basis.

Jay was required to perform uncompensated services for Mack, including cleaning her house, doing her laundry, and picking up her groceries. She was also required to transcribe certain videos without compensation. In addition, Mack gave Jay a "special assignment" to "seduce" Raniere and "have him take a naked picture" of Jay; Jay understood this assignment to include having sex with Raniere. Jay refused to carry out the assignment and decided to leave DOS.

After Raniere and several members of his "inner circle" were indicted, each of Raniere's co-defendants pleaded guilty to various crimes. Following a six-week jury trial before Judge Garaufis, Raniere was convicted of: racketeering conspiracy (Count 1); racketeering (Count 2); forced labor conspiracy (Count 3); wire fraud conspiracy (Count 4); sex trafficking conspiracy (Count 5); sex trafficking of Nicole (Count 6); and attempted sex trafficking of Jay (Count 7).[5] In support of their guilty finding for Count 2, the jury found that the

---

[5] We refer to the counts as they appear on the verdict sheet.

8

Government had proved that Raniere had engaged in all of the alleged racketeering acts: four acts of conspiracy to commit identity theft, two acts of identity theft, conspiracy to unlawfully possess an identification document, two acts of sexual exploitation of a child, possession of child pornography, conspiracy to alter records for use in an official proceeding, trafficking for labor and services, document servitude,[6] extortion, sex trafficking of Nicole, and forced labor.[7] The District Court sentenced Raniere principally to 120 years' imprisonment and a $250,000 fine.

## II. DISCUSSION

We dispose of most of Raniere's arguments on appeal in a summary order filed simultaneously herewith. We write separately in this opinion to address Raniere's argument that a "commercial sex act"—statutorily defined as "any sex act, on account of which anything

---

[6] Document servitude occurs when one:

knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person . . . to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

18 U.S.C. § 1592(a).

[7] The racketeering act of sex trafficking of Nicole was referred to on the verdict sheet as Act 10A.

of value is given to or received by any person," 18 U.S.C. § 1591(e)(3)— must involve the exchange of monetary or financial benefits. We first address the statutory text before turning to Raniere's specific challenges.

## A. "Commercial Sex Act"

Congress enacted the statute at the center of this appeal, 18 U.S.C. § 1591, as part of the Trafficking Victims Protection Act of 2000 ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000). In passing the TVPA, Congress's purpose was "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a).

In relevant part, Section 1591 provides for punishment of any individual:

(a) Who[] knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; *or*

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

10

[while also] knowing[] . . . that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, . . . .

18 U.S.C. § 1591(a) (emphasis added).

Section 1591 goes on to define a "commercial sex act" as "any sex act, on account of which *anything of value* is given to or received by any person." *Id.* § 1591(e)(3) (emphasis added). The statute does not explicitly define the phrase "anything of value," and the scope of that phrase is the subject of the present appeal.

Raniere argues that Section 1591 "was designed to punish sexual exploitation for economic profit." Raniere's Br. 23–24; *see also* Raniere's Supp. Br. 9. He therefore concludes that the phrase "anything of value," as it is used in the statute, must mean "economic benefit[]." Raniere's Br. at 24. We do not agree.

We begin our analysis "with the statutory text, exhausting 'all the textual and structural clues' bearing on its meaning and construing each word 'in its context and in light of the terms surrounding it.'" *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021) (footnote omitted) (first quoting *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018); then quoting *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)). Where, as here, a phrase is "not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). If we find that a phrase is unambiguous and is "coherent and consistent" with the statutory scheme, then "the inquiry ceases." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*

11

841 F.3d 133, 148 (2d Cir. 2016) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016)); *see also Matal v. Tam*, 137 S. Ct. 1744, 1756 (2017) (rejecting a proposed "resort to legislative history" as unpersuasive because a court's "inquiry into the meaning of the statute's text ceases when 'the statutory language is unambiguous and the statutory scheme is coherent and consistent'") (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 456 (2002)).

We start with the prefix "any" in the phrase "anything of value." "Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (cleaned up).[8] Our understanding of "anything of value" is thus guided by the expansive meaning of "any." *See United States v. Cook*, 782 F.3d 983, 988 (8th Cir. 2015) ("The phrase 'anything of value' [in Section 1591(e)(3)] is extremely broad."). In addition, we observe that Congress's definition of "commercial sex act"—"*any* sex act, on account of which *any*thing of value is given to or received by *any* person," 18 U.S.C. § 1591(e)(3) (emphases added)—uses the word or prefix "any" three times. Congress's repeated use of the word "any" in its definition "commercial sex act" further supports

---

[8] In *United States v. Gonzales*, 520 U.S. 1 (1997), the Supreme Court "considered a provision [18 U.S.C. § 924(c)(1)] that imposed an additional sentence for firearms used in federal drug trafficking crimes and provided that such additional sentence shall not be concurrent with 'any other term of imprisonment.'" *Ali*, 552 U.S. at 219 (quoting *Gonzales*, 520 U.S. at 4). "Notwithstanding the subsection's initial reference to federal drug trafficking crimes, [the Court] held that the expansive word 'any' and the absence of restrictive language left 'no basis in the text for limiting' the phrase 'any other term of imprisonment' to federal sentences." *Id.* (quoting *Gonzales*, 520 U.S. at 5).

an expansive understanding of the specific phrase at issue here, "anything of value."

We have previously had occasion, albeit in other contexts, to consider the remainder of the phrase. We have clarified in those other contexts that the phrase "thing of value" "is generally construed to cover intangibles as well as tangibles." *United States v. Girard*, 601 F.2d 69, 71 (2d Cir. 1979). In *Girard*, we observed that all of the following are "things of value": "amusement," "[s]exual intercourse, or the promise of sexual intercourse," "a promise to reinstate an employee," "an agreement not to run in a primary election," and "[t]he testimony of a witness." *Id*. (citations omitted). And in *United States v. Maneri*, we held that the phrase "thing of value" includes intangibles, specifically "the opportunity for a sexual encounter, in return for distributing child pornography" in the context of the advisory Sentencing Guidelines for 18 U.S.C. § 2252. 353 F.3d 165, 168 (2d Cir. 2003). Although the statutory phrase at issue here is "anything of value" and not a misspelled version, "any thing of value," our earlier holdings on "thing of value" remain instructive. Indeed, adding the expansive prefix "any" onto "thing" only underscores our understanding that "anything of value" should be broadly understood to include intangibles. A "thing of value" as it appears in Section 1591 may be intangible.

Finally, and consistent with our expansive understanding of the phrase thus far, we interpret the word "value" to refer to "a subjective, rather than objective, concept." *Cook*, 782 F.3d at 988 (quoting *United States v. Petrovic*, 701 F.3d 849, 858 (8th Cir. 2012)). Stated differently,

13

in the ordinary sense, we construe the word "value" to "focus . . . on the value which the [recipient] subjectively attaches to what is sought to be received." *Id.* at 988–89 (quoting *Petrovic*, 701 F.3d at 858); *see also United States v. Williams*, 705 F.2d 603, 623 (2d Cir. 1983) (concluding that the phrase "anything of value," as it is used in the bribery statute, 18 U.S.C. § 201, "has consistently been given a broad meaning" and that the district court correctly construed the phrase "to focus on the value that the defendants subjectively attached to the items received"). This conforms with the dictionary definition of "value," which includes "relative worth, utility, or importance." 3 Webster's Third New International Dictionary 2530 (1976).

Bearing in mind these textual clues, we conclude that, as it is used in Section 1591, the phrase "anything of value" need not have a monetary or financial component. Nothing in the statutory text indicates such a requirement, and in fact, a natural reading of the broad language used in Section 1591(e)(3) forecloses such a reading. Put another way, for purposes of the statute, monetary worth is not the sole measure of "value." *See United States v. Nilsen*, 967 F.2d 539, 543 (11th Cir. 1992) (discussing the phrase "thing of value" as it is used in 18 U.S.C. § 876). Accordingly, we hold that for sexual exploitation to be actionable under Section 1591, it need not have been conducted—as Raniere argues it must—for profit.[9]

---

[9] A number of district courts within our Circuit have reached similar conclusions concerning Section 1591's definition of "commercial sex act" in civil cases brought pursuant to 18 U.S.C. § 1595, which provides for a civil cause of action for violations of the TVPA. In these cases, courts have concluded that the statutory

14

## B. Raniere's Arguments

Turning to Raniere's specific arguments on appeal as they concern his sex trafficking convictions, we find none of them persuasive.

### a. Challenges to the Jury Instruction

Raniere first argues that the District Court erred in its instructions to the jury on the sex trafficking counts.

"We review de novo a properly preserved challenge to a jury instruction, reversing where the charge, viewed as a whole, either failed to inform the jury adequately of the law or misled the jury about the correct legal rule." *United States v. Capers*, 20 F.4th 105, 116 (2d Cir. 2021) (quoting *United States v. Binday*, 804 F.3d 558, 581–82 (2d Cir. 2015)).[10] "In reviewing a jury instruction, we 'examine not only the specific language that the defendant challenges but also the instructions as a whole to see if the entire charge delivered a correct interpretation of the law.'" *United States v. Al Kassar*, 660 F.3d 108, 127

---

phrase "anything of value" encompasses promises to help a person with career advancement. *See, e.g., Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 WL 4124616, at *9 (S.D.N.Y. Sept. 9, 2021); *Ardolf v. Weber*, 332 F.R.D. 467, 478 (S.D.N.Y. 2019); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019); *Canosa v. Ziff*, No. 18-CV-4115 (PAE), 2019 WL 498865, at *22 n.26 (S.D.N.Y. Jan. 28, 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018).

[10] We assume without deciding that Raniere preserved the relevant challenges to the jury instructions below.

(2d Cir. 2011) (quoting *United States v. Bala*, 236 F.3d 87, 94–95 (2d Cir. 2000)).

The District Court instructed the jury on the "element" of sex trafficking as follows:

> The third element that the Government must prove is that the Defendant knew that Nicole would be engaged in a commercial sexual act. *A commercial sexual act is any sex act of which anything of value is given to or received by any person because of such sex act.* It is not required that the victim actually performed a commercial sex act as long as the Government has proved that the Defendant recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited the victim for purposes of engaging in commercial sex acts. *A thing "of value" need not involve a monetary exchange and need not have any financial component.* The phrase "any sex act" should be given its plain meaning and may include any act performed with another for sexual gratification.

Jury Charge at 99–100, *United States v. Mack*, No. 18-CR-204 (NGG) (E.D.N.Y. June 18, 2019), ECF No. 728 (emphases added).

Raniere's initial objection is to the first italicized sentence above. In particular, he disputes the propriety of the District Court's usage of the phrase "because of" and argues that the sentence should have read: "A 'commercial sex act' is any sex act *on account of* which anything of value is given to or received by any person." Defendant Keith Raniere's Requests to Charge at 64, 86, *Mack*, No. 18-CR-204 (June 7,

16

2019), ECF No. 692-1 (emphasis added). He argues that the phrase "because of" "means only a 'connection to' or a proximate causational relationship to," whereas "on account of" "underscores a *quid pro quo*." Raniere's Supp. Br. 18.

We find no error in the District Court's use of the term "because of." Although the statute, 18 U.S.C. § 1591(e)(3), uses the phrase "on account of," we find no meaningful difference between that phrase and "because of." Raniere does not point to any authority supporting his view of the difference in meaning between "because of" and "on account of," which we understand to be virtually indistinguishable. Indeed, in a different context, the Supreme Court has noted that "[t]he words 'because of' mean 'by reason of: on account of.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quoting 1 Webster's Third New International Dictionary 194 (1966)). As a result, the District Court's use of "because of" neither failed to inform the jury adequately of the law nor misled the jury about the correct legal rule.

Raniere next challenges the second italicized sentence in the above jury instructions: "A thing 'of value' need not involve a monetary exchange and need not have any financial component." He argues that a "commercial sex act" must involve the exchange of monetary of financial benefits. For the reasons stated in Section II.A of this opinion, *ante*, we reject his argument. As we have concluded, the phrase "anything of value" need not have a monetary or financial component, and the actionable sexual exploitation need not have been conducted for profit. The jury was neither misinformed nor misled

about the law. [11]  Accordingly, we find no error in the District Court's instruction.

### b. Sufficiency-of-the-Evidence Challenge to the Sex Trafficking Counts

Next, Raniere challenges the sufficiency of the evidence presented against him at trial concerning his Section 1591 counts: sex trafficking conspiracy, sex trafficking of Nicole, and attempted sex trafficking of Jay.

When preserved, we review claims of insufficient evidence *de novo*. *Capers*, 20 F.4th at 113. When hearing a sufficiency challenge on appeal, we make a "limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt 'beyond a reasonable doubt.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 314–15 (1979)). "All that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all." *Id.* at 244 (quoting *Jackson*, 443 U.S. at 319).

---

[11] To the extent Raniere also contends that the second italicized sentence in the above jury instructions is duplicative because the first italicized sentence's reference to "anything of value" already implied that the thing of value need not involve a monetary exchange or have any financial component, we fail to see how any potential redundancy misled the jury about the correct legal rule.

It is no surprise then that a defendant raising a sufficiency challenge "face[s] a heavy burden." *Capers*, 20 F.4th at 113 (quoting *United States v. Ho*, 984 F.3d 191, 199 (2d Cir. 2020)). Indeed, "we must sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (cleaned up). We "may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id*. (quoting *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020)).

In conducting our review, "[w]e must analyze the evidence in conjunction, not in isolation, and apply the sufficiency test to the totality of the government's case and not to each element, as each fact may gain color from others." *Atilla*, 966 F.3d at 128 (cleaned up). And "[w]e must credit every inference that the jury might have drawn in favor of the government, because the task of choosing among competing, permissible inferences is for the jury, not for the reviewing court." *Id.* (cleaned up).

### i. "Anything of Value"

Raniere first argues that the Government failed to provide evidence that "anything of value" was received or given in connection with a sex act. We disagree.

The Government did in fact present evidence at trial that DOS "masters," including Mack, obtained "things of value" in connection with assigning their DOS "slaves" to engage in sexual acts with Raniere. For example, the Government presented evidence that Mack was able to maintain and strengthen her privileged position in the DOS hierarchy because of the relationship between Raniere and one of Mack's "slaves," Nicole. The Government also presented evidence that Raniere set an expectation that DOS "masters" would receive approximately 40 hours of "work" per week from their various "slaves." Gov. App'x 235 (testimony of Lauren Salzman, one of Raniere's co-conspirators who pleaded guilty to racketeering and racketeering conspiracy). Moreover, those "masters" who were able to recruit a sufficient number of "slaves" (and "slaves" of "slaves") would qualify for a "special position" and receive "special privileges" from Raniere. *Id.* Furthermore, the Government presented evidence that Raniere authorized certain payments to Mack for her work as "head trainer" at the same time that Mack encouraged a "slave," India, to "complete [an] assignment" involving "tak[ing] all her clothes off, while [Raniere was] clothed, pos[ing] in the most revealing way, and hav[ing Raniere] take a picture of her." *Id.* at 1269, 1271 (emails between Raniere and Mack).

Raniere argues that "[m]aintaining a spot in the first line" of DOS cannot constitute "anything of value" for purposes of Section 1591. *Id.* at 1047 (Government counsel's trial summation). But as discussed above, we reject the argument that only the exchange of things with monetary value can suffice for purposes of the statutory

definition of "commercial sex act."  A privileged position in an organization may constitute intangible "value."  And indeed, here, evidence presented at trial demonstrated that the privileged position came with direct benefits, including free labor from the "slaves" who were expected to perform "acts of care" for their "masters."

The evidence regarding the giving or receiving of "anything of value" submitted at trial was neither nonexistent nor meager.  We conclude that the evidence was strong enough to reach a jury and that Raniere was afforded at least "the minimum that due process requires." *Musacchio*, 577 U.S. at 243.  We therefore decline to disturb Raniere's convictions on these counts.  The Government did not fail to provide sufficient evidence that "anything of value" was received or given in connection with a sex act.

### ii. "On Account of"

Next, Raniere argues that even if things of value were given or received, they were not given or received "on account of" a sexual act. The Government presented evidence that on May 31, 2016, Raniere blindfolded Nicole, ordered her to undress, and tied her to a table, after which a third person performed oral sex on Nicole in Raniere's presence.  Raniere argues that the Government failed to present evidence that Mack—Nicole's "master"—received anything of value "on account of" the May 31, 2016 sexual act.

In another context, the Supreme Court has interpreted the phrase "'on account of' to "require[e] a causal connection between the term that the phrase 'on account of' modifies and the factor specified

21

in the statute . . . ." *Rousey v. Jacoway*, 544 U.S. 320, 326 (2005) (interpreting 11 U.S.C. § 522(d)(10)(E)). Similarly, we interpret the statutory language in Section 1591(e)(3) to require a causal connection between the sexual act and the giving or receiving of anything of value.

With that in mind, we conclude that Raniere's sufficiency challenge lacks merit. At trial, the Government offered evidence from which a reasonable jury could have concluded that Mack's receipt of various things of value were causally connected to her assigning her "slaves" to engage in sexual acts with Raniere, including the May 31, 2016 incident. This included testimony that Mack directed Nicole "[t]o reach out to . . . Raniere," which Nicole first did in April 2016 by email. Gov. App'x 747–48 (testimony of Nicole). The Government also offered testimony that Nicole understood Mack's relationship with Raniere to be the "most important relationship" to Mack, and that, accordingly, Nicole understood that it was "important to [Nicole's] relationship with [Mack] to make [Raniere] happy" and that how Nicole "related to [Raniere] . . . reflected on [Mack]." *Id.* at 764–65 (testimony of Nicole). Nicole understood that she needed to be "well behaved" in front of Raniere. *Id.* at 765. And Nicole kept Mack apprised of her relationship with Raniere, including by informing her of the May 31, 2016 incident. *Id.* at 760. She further received encouragement from Mack to "make [Raniere's] life easier." *Id.* at 764.

The Government's evidence purporting to establish that Mack received things of value "on account of" her assigning "slaves" to engage in sexual acts with Raniere was neither nonexistent nor

22

meager. Based on this evidence, a reasonable jury could conclude that Mack's privileged position in DOS was causally connected with her "assignment" of Nicole to Raniere for sexual purposes. As with the evidence that "anything of value" was received or given in connection with a sex act, the evidence relevant to whether Mack received things of value "on account of" her assigning "slaves" to engage in sexual acts with Raniere was strong enough to reach a jury. Thus, we conclude that Raniere had a meaningful opportunity to defend himself.

### iii. "Coercion"

Finally, Raniere argues that there was no evidence that the sexual acts were "coerced" as required by 18 U.S.C. § 1591. The statute defines "coercion" to include "threats of serious harm," 18 U.S.C. § 1591(e)(2)(A), and the statute in turn defines "serious harm" to mean:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

*Id.* § 1591(e)(5).

Nicole testified that she felt that she had "[n]o choice" in complying with Mack's instruction to "tell [Raniere] that [she] would

23

do anything that he asked [her] to do." Gov. App'x 756 (testimony of Nicole). She further testified that she had submitted "collateral" to Mack in the form of, *inter alia*, letters implicating her family members in criminal activity, a sexually explicit video, and a letter about a prominent former romantic partner that could "ruin [Nicole's] career." *Id.* at 740. Nicole testified that she understood that breaking her "commitment" to DOS and her "master" would mean that her "collateral" would be released. *Id.* at 746.

Once again, Raniere has failed to persuade us that there is insufficient evidence to sustain his convictions. Any rational trier of fact could have found coercion beyond a reasonable doubt.

## III. CONCLUSION

To summarize: We hold that to qualify as a "commercial sex act" for purposes of 18 U.S.C. § 1591, the "[]thing of value" given or received need not have a monetary or financial component. Thus, for sexual exploitation to be actionable under Section 1591, it need not have been conducted for profit.

For the foregoing reasons, and for the reasons explained in our summary order also entered today, we **AFFIRM** the District Court's judgment of conviction entered on October 30, 2020, as it concerns the sex trafficking conspiracy (Count 5), the sex trafficking of Nicole (Count 6), the attempted sex trafficking of Jay (Count 7), and the racketeering act of sex trafficking of Nicole (Act 10A).

24