24-1783
*United States v. Bedell*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of June, two thousand twenty-five.

PRESENT:
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> MICHAEL H. PARK,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

      *Appellee,*

      v.                                                                 No. 24-1783

JESSE BEDELL,

      *Defendant-Appellant.*<sup>*</sup>

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

_____

| | |
|---|---|
| **For Defendant-Appellant:** | James P. Egan, Assistant Federal Public Defender, Office of the Federal Public Defender, Syracuse, NY. |
| **For Appellee:** | Michael F. Perry, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 27, 2024 judgment of the district court is **AFFIRMED**.

Jesse Bedell appeals from a judgment of conviction following a jury trial in which he was found guilty of two counts of transmitting communications in interstate commerce to threaten to injure another person in violation of 18 U.S.C. § 875(c). On appeal, Bedell argues that there is insufficient evidence to support the jury's verdict, and that the district court issued an erroneous jury instruction. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision below.

## I.    Sufficiency of the Evidence

We review the sufficiency of the evidence underlying a jury verdict *de novo*, though a defendant bringing a sufficiency challenge bears a heavy burden.   *See United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021).   We will affirm a jury verdict so long as, after "viewing the evidence in the light most favorable to the government, drawing all inferences in the government's favor[,] and deferring to the jury's assessments of the witnesses' credibility," "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Krivoi*, 80 F.4th 142, 155 (2d Cir. 2023) (internal quotation marks omitted).   In order to sustain a conviction under section 875(c), the jury must, among other things, find beyond a reasonable doubt that (1) "the defendant transmit[ed] a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," *Elonis v. United States*, 575 U.S. 723, 740 (2015),[1] and (2) the communication is a "true threat," such that "an ordinary, reasonable recipient who is familiar with the context of the

---

[1] Though *Elonis* "decline[d] to address" whether recklessness would also suffice, 575 U.S. at 740, the Supreme Court has since held that "consciously disregard[ing] a substantial [and unjustifiable] risk" may satisfy the *mens rea* requirement of an analogous state statute without running afoul of the First Amendment, *see Counterman v. Colorado*, 600 U.S. 66, 78–82 (2023) (internal quotation marks omitted).   For purposes of this appeal, however, we focus only on the more stringent *Elonis* requirement.

[threat] would interpret it as a threat of [bodily] injury," *United States v. Sovie*, 122 F.3d 122, 125 (2d Cir. 1997) (internal quotation marks omitted) (first alteration in original).

Here, the evidence introduced at trial was more than sufficient to support the jury's finding that, after learning he would be denied a job on account of his failure to disclose a prior misdemeanor conviction, Bedell left two threatening voicemails to company recruiters in violation of section 875(c). With respect to the first element, which is sometimes referred to as the "subjective" component of section 875(c), the jury heard recordings of the two voicemails that Bedell left with the recruiters, each of which amply demonstrated his clear intent to issue threats. The first voicemail specifically warned that, as a result of its decision to "hold[] [Bedell] up from a [expletive] job," the company "[expletive] better keep [its] eyes on that [expletive] Glens Falls plant cause [he's] going to blow that [expletive] up." Gov't Ex. 1 at 00:21–28. Bedell doubled down by leaving another voicemail, this time warning that he would "burn [the] whole [expletive] plant down," that he was "going to kill [the recruiter]," and that he "[couldn't] wait to see [the recruiter's] face when [he] [expletive] bl[e]w that [expletive] up." Gov't Ex. 2 at 00:22–42.

4

In addition to the voicemails, the jury viewed a video recording of Bedell's conversation with a police officer on the same day that he left the messages. Immediately upon encountering the officer, Bedell admitted that he had left "threatening" voicemails with the company. Gov't Ex. 3A at 00:02–03. During that conversation, Bedell further acknowledged that he "was angry" when he made the phone calls, Gov't Ex. 3B at 00:13–14, and that he was glad the voicemails made the company "nervous," *id.* at 00:30–35, supporting an inference that he left the voicemails with the intention of instilling fear of bodily injury in others. Bedell also took the stand at trial and responded "[y]es" when asked whether "it is fair to say . . . that at the time you left the voicemails, you disregarded the risk [that] saying things like [']I'm going to blow that plant up['] . . . would be viewed as threats." Bedell App'x at 135.

As for the second element, or "objective" component, there can be little doubt that a reasonable recipient of the voicemails would have construed Bedell's threats to blow up the factory as threats of bodily injury. The government specifically introduced evidence that employees work at the factory "24 hours a day, 7 days a week," and that this was explained to Bedell as part of the interview process. *Id.* at 45. The jury also heard evidence that, following Bedell's

5

voicemails, the company sent workers home and hired armed security to protect the plant. Simply put, though Bedell was entitled to present his case to the jury, the jury was not required to accept Bedell's alternative theories that he only intended to threaten the destruction of property or that he was speaking figuratively and meant that he would "blow up" or "kill" the company's reputation on the internet.

## II. Jury Instruction

Bedell also mounts two challenges to the jury instruction given by the district court. We review a preserved challenge to a jury instruction *de novo*. *See United States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013). A jury instruction is erroneous if it "failed to inform the jury adequately of the law or misled the jury about the correct legal rule." *United States v. Raniere*, 55 F.4th 354, 362 (2d Cir. 2022) (internal quotation marks omitted). But even if a district court's instruction is erroneous, we vacate a conviction only where "viewing as a whole the charge actually given, [the defendant] was prejudiced." *United States v. Dupre*, 462 F.3d 131, 139 (2d Cir. 2006) (internal quotation marks omitted).

Bedell first argues that the district court's *mens rea* instruction permitted the jury to reach a guilty verdict on a finding that he had negligently transmitted the

threats.   But this argument is belied by the record, which reflects that the district court specifically instructed the jury that:

> [T]he government must establish beyond a reasonable doubt . . . that the defendant transmitted the threat knowingly and intentionally. To establish this element, [the] government must prove that the defendant knowingly and intentionally sent the threats as alleged in Count One and Two and that this did not occur by accident, mistake, or negligence.
>
> To establish this element, the government must prove that the defendant transmitted the communication for the purpose of issuing a threat or with knowledge that the communication would be received as a threat or in conscious disregard of the substantial and unjustifiable risk that the communication would be entered [sic] as a threat as defined in these instructions.

Bedell App'x at 204.

Bedell faults the district court for not including additional language from *Elonis* which would have further explained that negligence was not enough to support a guilty verdict.   But the instruction given by the district court correctly explained the mental state required to find Bedell guilty and expressly stated that "accident, mistake, or negligence" would not be sufficient.   *Id.*   That language "mirrors, nearly word-for-word, the model instruction from the leading set of pattern federal jury instructions," *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 150 (2d Cir. 2025); *see also* 2 Leonard B. Sand *et al.*, Modern Federal Jury

Instructions-Criminal ¶ 31.02 (2024); is consistent with the law under *Elonis*; and surely did not mislead the jury as to the correct legal rule, *see United States v. Bell*, 584 F.3d 478, 484 (2d Cir. 2009) (finding no legal error in jury instruction that "use[d] the very language of our relevant precedent" and was "also found in L. Sand, et al., *Modern Federal Jury Instructions*"). The district court therefore did not err in concluding that Bedell's requested instruction was unnecessarily redundant.

Bedell next argues that the district court improperly instructed the jury to rely on the voicemails over all other pieces of evidence. But again, the record reflects that the district court did no such thing. Specifically, the district court instructed the jury that:

> The intent with which an act is done is often more clearly and conclusively shown by the act itself or by a series of acts than by words or explanations of the act that occurred long after its occurrence.
>
> Accordingly, intent, willfulness[,] and knowledge are usually established by surrounding facts and circumstances as of the time of the acts in question occurred or the events took place and the reasonable inferences to be drawn from them.

Bedell App'x at 205. This instruction, taken from the same standard treatise, *see* 1 Sand *et al.*, ¶ 6.06, properly guided the jury as to how it might discern an individual's state of mind. Bedell nowhere explains how this instruction

8

misinformed or misled the jury about the relevant law.  *See Raniere*, 55 F.4th at 362.  Accordingly, we see no error in the jury instruction given.

*      *      *

We have considered Bedell's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court