24-778 (L)
*United States v. Raniere*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of October, two thousand twenty-five.

PRESENT:

> PIERRE N. LEVAL
> RICHARD J. SULLIVAN,
> MARIA ARAÚJO KAHN,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

        *Appellee*,

        v.                          No. 24-778 (L)
                                        No. 24-1285 (CON)
                                        No. 24-1317 (CON)

KEITH RANIERE, a.k.a. VANGUARD,

*Defendant-Appellant.*<sup>*</sup>

_____

| | |
|---|---|
| **For Defendant-Appellant:** | DEBORAH J. BLUM, ESQ., New York, NY. |
| **For Appellee:** | TANYA HAJJAR (Anthony Bagnuola, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, NY. |

Appeal from orders of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the April 26, 2023, March 7, 2024, and April 29, 2024 orders of the district court are **AFFIRMED**.

Keith Raniere – who is currently serving a 120-year sentence following his conviction after a jury trial on charges of racketeering, racketeering conspiracy, wire-fraud conspiracy, forced-labor conspiracy, sex-trafficking conspiracy, and two counts of sex trafficking – appeals from the district court's denial of his post-trial motions for a new trial, for post-conviction discovery, and for recusal of the district-court judge who has presided over his case since 2018. We assume the parties' familiarity with the underlying facts, procedural history, and issues on

---

<sup>*</sup> The Clerk of Court is respectfully directed to amend the caption as set forth above.

appeal, to which we refer only as necessary to explain our decision. *See United States v. Raniere*, 55 F.4th 354 (2d Cir. 2022); *United States v. Raniere*, No. 20-3520-CR, 2022 WL 17544087 (2d Cir. Dec. 9, 2022).

We review the denial of motions for a new trial under Federal Rule of Criminal Procedure 33, to compel post-conviction discovery, and for judicial recusal pursuant to 28 U.S.C. § 455 for abuse of discretion. *See United States v. Sessa*, 711 F.3d 316, 321 (2d Cir. 2013); *United States v. Forbes*, 790 F.3d 403, 411 (2d Cir. 2015); *United States v. Wedd*, 993 F.3d 104, 114 (2d Cir. 2021).

**I. The District Court Did Not Abuse its Discretion in Denying Raniere's Third Motion for a New Trial.**

Raniere first contends that the district court erred in denying his third motion for a new trial based on "newly discovered evidence" and purported *Brady* violations related to the "core evidence" underlying three predicate acts of his racketeering conviction. Raniere Br. at 1 (internal quotation marks omitted); *see also Brady v. Maryland*, 373 U.S. 83 (1963). Those predicate acts – for child exploitation and child pornography – were added in a second superseding indictment after the government discovered that Raniere produced and possessed numerous sexually explicit photographs of a fifteen-year-old girl, "Camila," that were recovered from a Western Digital-brand hard drive (the "Hard Drive") and

3

Canon EOS 20D camera (the "Camera") seized from a townhouse that Raniere used.

The government provided Raniere with the Hard Drive, Camera, photographs recovered from both, and the accompanying forensic reports prior to trial. Though Raniere raised concerns about his ability to analyze this evidence in time for trial, he nevertheless "requested that the Court keep the dates for the current trial schedule" because he was "ready to go to trial." Sp. App'x at 22–23 (alteration adopted and internal quotation marks omitted).

At trial, the government introduced illicit photographs of Camila and metadata from the Hard Drive to prove the child exploitation and child pornography predicate acts of the racketeering count in the superseding indictment. When the FBI analyst who initially examined the Camera was unavailable to testify, FBI Senior Forensic Examiner Brian Booth reexamined the Camera and its contents, creating a duplicate forensic image of the camera card and a new forensic report. Raniere did not object to the new report's admission into evidence, and his trial counsel extensively cross-examined Booth about the Hard Drive, the Camera, their contents, and the associated metadata. The report revealed on its face that it relied on a second forensic copy of the camera card.

4

The jury ultimately convicted Raniere on all seven counts in the indictment, finding that he had committed all eleven predicate acts charged. This Court affirmed Raniere's conviction and sentence on direct appeal. *See Raniere*, 55 F.4th at 366; *Raniere*, 2022 WL 17544087, at \*9.

After extensive post-trial litigation, Raniere filed a third motion for a new trial, asserting that newly discovered evidence from the Camera's "memory card and hard drive," Raniere Br. at 1, revealed that "the government manufactured child pornography and planted it on a computer hard drive to tie it to him," App'x at 770. According to Raniere, prosecutors had "falsified, fabricated, and manipulated all the key evidence" to convict Raniere of the child exploitation and child pornography predicate acts. *Id.* To support his claims, Raniere relied primarily on a post-hoc report prepared by his retained expert, retired FBI agent James Richard Kiper, that criticized Booth's handling of the Hard Drive and Camera and declared that "the FBI must have been involved in this evidence tampering." *Id.* (internal quotation marks omitted). After filing his third motion for a new trial, Raniere filed several related motions seeking to compel the government to produce copies of digital forensic evidence and FBI examination notes, among other things.

The government opposed Raniere's third motion for a new trial and attached an affidavit from Camila confirming that she is the subject in the photos introduced at trial, which were taken when she was fifteen. It also attached a declaration from David Loveall II, a senior FBI computer scientist, explaining that Kiper's report was "misleading or erroneous" in various respects and that it "ignore[d] plausible explanations for observed phenomena in favor of allegations of tampering." *Id.* at 1619. The district court ultimately denied Raniere's motion, concluding that Raniere did nothing more than "challenge evidence that he previously stated he was ready to challenge, that he had the opportunity to challenge, and that he did in fact challenge during his trial." Sp. App'x at 27–28.

Federal Rule of Criminal Procedure 33 permits district courts to order a new trial "if the interest of justice so requires." But courts may exercise this power only "in the most extraordinary circumstances," when "letting a guilty verdict stand would be a manifest injustice." *United States v. Gramins*, 939 F.3d 429, 444 (2d Cir. 2019) (emphasis and internal quotation marks omitted). Where, as here, a Rule 33 motion is premised on newly discovered evidence, the court may only grant relief if "(1) the evidence was newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to

6

obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *Forbes*, 790 F.3d at 406–07 (alteration adopted and internal quotation marks omitted). And "[w]e have long held" that for evidence to be "newly discovered," a defendant must show that "the evidence could *not* with due diligence have been discovered before or during trial." *Id.* at 408–09 (emphasis added). Finally, to secure a new trial for *Brady* violations, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; "must have been suppressed by the [government], either willfully or inadvertently"; and must have resulted in prejudice to the defendant. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The district court did not abuse its discretion in denying Raniere's motion for a new trial because Raniere identified no newly discovered evidence, much less evidence that was suppressed under *Brady*. *See* Fed. R. Crim P. 33; *Forbes*, 790 F.3d at 409; *Strickler*, 527 U.S. at 281–82. After discovering the pictures of Camila on the Hard Drive, the government informed Raniere that it would introduce digital evidence from both the Hard Drive and the Camera at trial. Raniere hired a forensic expert to review the relevant photographs on FBI premises, and

Raniere's trial counsel cross-examined FBI Examiner Booth at length about "the photographic evidence, the Western Digital hard drive, the camera card ('CF card'), [and] the related metadata." Sp. App'x at 23–24. And that cross-examination yielded fruit: the jury heard testimony from Booth that metadata could be altered, and that the Camera's memory card was accessed "while it was in the possession of the FBI," raising the possibility of tampering. App'x at 495–96. Nevertheless, Raniere's trial counsel did not pursue the issue, and at no point did Raniere overtly suggest that the child-pornography evidence had been doctored or planted. It follows that the Camera's memory card and allegedly suppressed child pornography were not "new evidence" that "could not with due diligence have been discovered before or during trial." *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980). The same is true with respect to Raniere's *Brady* claim, since "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted).

But even if we assumed that evidence from the Camera was newly discovered (or suppressed, for that matter), Raniere cannot show that "the

8

evidence would likely result in an acquittal," *Forbes*, 790 F.3d at 406–07 (internal quotation marks omitted), as required under Rule 33, or that it would "put the whole case in such a different light as to undermine confidence in the verdict," *Kyles v. Whitley*, 514 U.S. 419, 435 (1995), as required under *Brady*. For starters, Raniere does not explain *why* the duplicate forensic image of the Camera was materially exculpatory; he merely asserts that he "would have had it analyzed by a forensic expert," which might have led to a potential "application for suppression." Raniere Br. at 43. But such vague statements do not come close to meeting Raniere's burden of "proving that he is entitled to a new trial" under either Rule 33 or *Brady*. *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009); *see United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014). And that's particularly true here, given the district court's finding that "the evidence presented at trial, the Loveall report," and Camila's affidavit "verifying her identity and age in the photos" were a "far more plausible explanation for the discrepancy in the [Camera's] metadata." Sp. App'x at 29; *see United States v. Escalera*, 957 F.3d 122, 137 (2d Cir. 2020) (noting that, for purposes of a Rule 33 motion, we "accept[] the district court's factual findings unless clearly erroneous").

Moreover, Raniere's argument that the district court's "reliance upon" Loveall's report and Camila's declaration "violates the Confrontation Clause" is meritless. Raniere Br. at 21. It was Raniere's burden to establish that a "manifest injustice" warranting the reversal of his conviction had occurred. *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal quotation marks omitted). We have long held that affidavits "submitted by the [g]overnment" "may be considered in assessing the sufficiency" of a defendant's claim in post-conviction proceedings. *United States v. Franzese*, 525 F.2d 27, 30–31 (2d Cir. 1975) (Friendly, J.) (internal quotation marks omitted).

Raniere also overlooks the mountain of evidence presented at trial that substantiated the child exploitation and child pornography predicate acts related to the fifteen-year-old Camila. *See* Sp. App'x at 23 (noting other evidence, including "messages from the victim where she referenced her sexual relationship with Raniere beginning in 2005," when Camila was fifteen years old; "communications from Mr. Raniere referencing the photos; testimony from the victim's sister that she was aware of the relationship [between Camila and Raniere]" and that Camila was fifteen years old at the time; and "the victim's medical records"). Even setting aside the allegedly newly discovered or

10

suppressed evidence, there is no "real concern that an innocent person may have been convicted," *Sanchez*, 969 F.2d at 1414, because "the jury was presented with sufficient evidence" to convict Raniere of "sexually abusing Camila in September 2005," *Raniere*, 2022 WL 17544087, at *3.

Finally, it bears noting that the jury convicted Raniere on all seven counts and found that all eleven predicate racketeering acts had been proven. As two racketeering acts demonstrate the required "pattern" of racketeering activity, *see First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004), even without the predicate acts at issue here, "the result of the proceeding would [not] have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.) (internal quotation marks omitted).

The district court therefore did not abuse its discretion in denying Raniere's motion for a new trial.

**II. The District Court Did Not Abuse its Discretion in Denying Raniere's Motions for Post-Conviction Discovery.**

Raniere next asserts that the district court abused its discretion in denying his multiple post-conviction motions to compel the production of evidence. We are unpersuaded.

To begin, Raniere provides no legal basis for his claim to possess a freestanding "separate non-statutory" right to "post-judgment" discovery. Dist. Ct. Doc. No. 1230 at 1 (capitalization altered). To the extent that Raniere contends that *Brady* compels such a result, we disagree. *Brady* enshrines a pretrial right and thus provides "the wrong framework" for analysis because Raniere "has already been found guilty at a fair trial, and has only a limited interest in post[-]conviction relief." *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009). And, for the reasons discussed above, Raniere (1) already had access to the evidence that he now requests at the time of trial, and (2) ignores the "ample evidence" supporting his conviction on the relevant predicate acts.[1] App'x at 1689.

The district court did not abuse its discretion in denying Raniere's motions to compel post-conviction discovery.

---

[1] Raniere has filed a petition for habeas corpus pursuant to 28 U.S.C. § 2255, which the district court held in abeyance pending resolution of this appeal. While discovery is available in section 2255 proceedings upon a showing of "good cause," *see* Habeas Corpus R. 6(a), "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

**III.    The District Court Did Not Abuse its Discretion in Denying Raniere's
Motion for Recusal.**

Raniere also asserts that the district court abused its discretion in denying

his motion to recuse, pointing to Judge Garaufis's alleged partiality at trial and at

the restitution hearing.    We disagree.

A district judge must "disqualify himself in any proceeding in which his

impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[2]    The governing

"standard is objective reasonableness – whether an objective, disinterested

observer fully informed of the underlying facts, would entertain significant doubt

that justice would be done absent recusal."    *United States v. Carlton*, 534 F.3d 97,

100 (2d Cir. 2008) (alteration adopted and internal quotation marks omitted).

That inquiry "deals exclusively with appearances."    *United States v. Amico*, 486

F.3d 764, 775 (2d Cir. 2007).    Recusal decisions are left "to the sound discretion of

the district court," *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007), and

are "rare[ly]" "disturbed" on appeal, *In re Int'l Bus. Machines Corp.*, 45 F.3d 641,

642 (2d Cir. 1995).    And the bar is high – even those "judicial remarks" that are

"critical or disapproving of, or even hostile to, counsel, the parties, or their cases"

---

[2] Though 28 U.S.C. § 455(b)(1) provides a separate statutory basis for recusal based on "personal bias or prejudice concerning a party," Raniere has not relied on that provision in this appeal.

do not ordinarily "support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Only "deep-seated favoritism or antagonism" that makes "fair judgment impossible" warrants recusal. *Id.*

Raniere cannot satisfy that benchmark. At trial, the district judge curtailed the cross-examination of cooperating government witness Lauren Salzman "to avoid needless harassment" and to "attend to the witness's wellbeing." Sp. App'x at 7. The district court explained at the time that it would not countenance "someone hav[ing] a nervous breakdown on the witness stand." App'x at 286–87. Raniere argues that this decision evinced an intent "to prevent the jury from hearing testimony that was favorable to the defense." Raniere Br. at 58. But as we noted previously in affirming Raniere's conviction on direct appeal, Raniere's counsel had conducted "an already lengthy cross-examination" of Salzman, asking "many questions on related topics." *Raniere*, 2022 WL 17544087, at *7. Far from showing "deep-seated antagonism" toward Raniere, *Liteky*, 510 U.S. at 555 (ellipsis omitted), the district court's decision to curtail Salzman's testimony fell within its "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice,

14

confusion of the issues, the witness'[s] safety, or interrogation that is repetitive," *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Nor did the district court demonstrate objective bias at the restitution hearing. Raniere points to an exchange between the district judge and defense counsel regarding counsel's request for a postponement of the proceedings as further evidence of alleged partiality. But again, *Liteky* held that "expressions of impatience, dissatisfaction, annoyance, and even anger" toward a party, particularly when devoted to "ordinary efforts at courtroom administration," are not grounds for recusal. 510 U.S. at 555–56. That is especially true here given that this exchange occurred after trial and was directed toward Raniere's counsel rather than the defendant himself.

For these reasons, Raniere has failed to show that the district court abused its discretion in denying his motion for recusal. Recognizing the challenges confronted by district-court judges on a daily basis, the Court commends Judge Garaufis for handling this seven-year litigation with skill, patience, and restraint.

*       *       *

We have considered Raniere's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16